# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————

m 99-31113

———————

DONALD N. WILLIAMSON,

Plaintiff-Appellee,

VERSUS

J.C. PENNEY LIFE INSURANCE COMPANY,

Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————

September 15, 2000

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

## I.

Gisele Williamson was crushed to death by a bulldozer operated by her husband, Donald Williamson ("Williamson"), in 1999. She was covered by an accident insurance policy written by the defendant, J.C. Penney Life Insurance Company ("J.C. Penney"), providing, *inter alia*, $100,000 of coverage for accidents involving "land motor vehicles" and a catch-all accidental death provision limited to $25,000 for unenumerated causes of death. Maintaining that a bulldozer is not a "land motor vehicle" for purposes of the policy, J.C. Penney tendered $25,000 to Williamson, who accepted it with a reservation and brought suit in state court for the remaining $75,000. J.C. Penney removed to federal court on the basis of diversity jurisdiction.[1]

———————

[1] The $75,000 amount in controversy requirement for diversity cases, *see* 28 U.S.C.

(continued...)

The district court concluded that a bulldozer is a "land motor vehicle" under the policy and granted summary judgment in favor of Williamson. We disagree and therefore reverse and render judgment in favor of J.C. Penney.

## II.

Louisiana insurance law governs this controversy, and under Louisiana law, general rules of contract interpretation apply. The ordinary meaning of the text governs in the absence of an absurd result, and each provision is read in light of the others. In case of ambiguity, Louisiana courts construe insurance contracts against the insurer and in favor of coverage. *See Peterson v. Schimek*, 729 So. 2d 1024, 1028-29 (La. 1999).

Having closely examined the text of the particular provision at issue, as well as other portions of the policy, we conclude that a bulldozer is not a "land motor vehicle" as defined by the policy and therefore see no need to apply the ambiguity tie-breaker rule. The dispositive provision reads:

LAND MOTOR VEHICLE includes any gasoline, diesel, or similarly powered vehicle customarily used for transportation on land and for which the operator is required to be licensed.

This category includes, but is not limited to the following:

1. vehicles considered "Private Passenger Automobiles" by the Policy; and

2. two-wheeled vehicles such as motorcycles and motorscooters; and

3. vehicles with more than four wheels, such as tractor/trailer rigs and flat bed trucks.

Farm equipment and forklifts are specifically excluded under Land Motor Vehicles.

The policy definition of "land motor vehicle" contains a three-prong conjunctive test. First, the vehicle can be "any gasoline, diesel, or similarly powered vehicle." Second, it must be "customarily used for transportation on land." Finally, it must be a vehicle "for which the operator is required to be licensed."

The parties stipulate that Louisiana law does not require a license to operate a bulldozer.[2] Therefore, if we determine that the above provision *exhaustively defines* the term "land motor vehicle," J.C. Penney is entitled to judgment. If, on the other hand, we decide that the provision is merely *illustrative* of what constitutes a "land motor vehicle," Williamson prevails.[3]

---

[1](...continued)
§ 1332(a) was apparently satisfied, because Williamson also sought recovery for allegedly arbitrary and capricious denial of coverage under LA. R.S. § 22:657.

[2] J.C. Penney additionally asserts that bulldozers fail the second prong of the definitionSSthat is, the requirement of "customar[y] use[] for transportation on land." We need not address this contention, because the parties agree that bulldozers fail the third prong of the contract definition.

[3] J.C. Penney alternatively submits that bulldozers are not "land motor vehicles," even if the contract definition is merely illustrative, citing LA.
(continued...)

### A.

Little meaning can be gleaned from the word "includes," notwithstanding the valiant efforts of both parties. J.C. Penney asserts that the policy's use of the phrase "includes, but is not limited to" with respect to specific vehicle types shows that J.C. Penney knows how to draft merely illustrative provisions, and therefore that the term "includes," alone, warrants an exhaustive meaning.

The difficulty with J.C. Penney's position, however, is that the policy could have used the word "means" rather than the more ambiguous "includes." Indeed, as Williamson points out, the policy makes use of the word "means" throughout other definitional provisions of the contract. Furthermore, the word "including" "typically indicates a partial list." BLACK'S

---

[3](...continued)
R.S. § 32:1(92), which defines "vehicle" as "every device by which persons or things may be transported upon a public highway or bridge, except devices moved by human power or used exclusively upon stationary rails or tracks." According to J.C. Penney, bulldozers are not vehicles, because they do not operate on public highways; indeed, such operation is illegal in Louisiana. A leading authority, by contrast, defines "vehicle" merely as "[s]omething used as an instrument of conveyance; any conveyance used in transporting passengers or merchandise by land, water, or air." BLACK'S LAW DICTIONARY 1551 (7th ed. 1999).

Applying Louisiana law, without the contract definition, we would look to the ordinary meaning of "land motor vehicle," which plausibly includes bulldozers. Alternatively, the term might call for application of the ambiguity tie-breaker rule, pursuant to which Louisiana courts find coverage. Because, however, we conclude that the policy definition is exhaustive, we have no occasion to construe the term "land motor vehicle" in its absence.

LAW DICTIONARY 766 (7th ed. 1999).

The same reasoning can be applied against Williamson. Thus, Williamson's own claim that the word "includes" is necessarily an illustrative term, because the policy also uses the word "means," fails for the same reasonSSbecause J.C. Penney also could have used the phrase "includes, but is not limited to" but, significantly, did not do so. *See id.*

### B.

Instead, we resolve this case by noting that it involves a listing not of *items* but rather of *conditions or requirements*. Specifically, the relevant requirement is the phrase "for which the operator is required to be licensed."

It does not make sense that J.C. Penney would have mentioned the requirement of licensing for vehicle operators in its policy if it did not intend for that provision to be mandatory. Therefore, because a vehicle must satisfy each of the policy conditions to constitute a "land motor vehicle," and because Louisiana law does not require a license to operate a bulldozer, we conclude that Williamson is not entitled to recovery for accidents involving "land motor vehicles."

In reaching this conclusion, we necessarily reject Williamson's argument that "land motor vehicles" includes bulldozers because bulldozers are not within the exclusion of farm equipment and forklifts. Observing that Louisiana does *not* require a license to operate farm equipment and forklifts,[4] Williamson argues that the exclusion provision would have no function, and thus would be rendered mere

---

[4] *See* LA. REV. STAT. ANN. 32:401(17) (excluding farm implements from definition of "motor vehicle" for purposes of motor vehicle licensing).

3

surplusage, were we to read the licensing requirement as mandatory.

Superfluous exceptions are commonplace, however, and have the effect merely of "mak-[ing] assurance doubly sure."[5] Thus, although a provision's meaning might be guided somewhat by the exceptions to that provision, the inference is a weak one.

Moreover, J.C. Penney uses the same policy language in states other than Louisiana.[6] Of course, that provision would not be surplusage in those states that require a license to operate farm equipment or a forklift.[7] In any event, it would be absurd, not to say unnecessarily burdensome on contract drafters, to apply the canon against surplusage on the basis of such subtleties.

In summary, although the policy definition of "land motor vehicle" is not plainly unambiguous, the only reasonable construction is that the requirements of customary use in transportation and operator licensing are mandatory and not merely illustrative. We therefore REVERSE and RENDER judgment in favor of J.C. Penney.[8]

---

[5] *See Crandon v. United States*, 494 U.S. 152, 174 (1990) (Scalia, J., concurring) (opining that "superfluous exceptions (to 'make assurance doubly sure') are a . . . common phenomenon").

[6] *See, e.g., Vanderwagen v. J.C. Penney Life Ins. Co.*, 202 F.3d 283, 1999 U.S. App. LEXIS 37762 (10th Cir. Dec. 23, 1999) (unpublished) (analyzing same language in contract governed by Illinois law).

[7] *See, e.g., Stanton v. City of Battle Creek,* 603 N.W.2d 285, 290 (Mich. Ct. App. 1999).

[8] In doing so, we note that our decision today is consistent with *Vanderwagen*.

RHESA HAWKINS BARKSDALE, Circuit Judge, specially concurring:

Pursuant to the stated controlling rule of contract interpretation — the ordinary meaning of the text governs in the absence of an absurd result and each provision is read in light of the others — "includes" is employed in the provision at issue to exhaustively define "land motor vehicle". This is demonstrated, in part, by the different uses, in that provision, of "includes" and of the immediately following "includes, but is not limited to": the former, for a complete, or exhaustive, list; the latter, for a partial, or illustrative, one.

Accordingly, I concur only in the judgment in favor of J.C. Penny Life Insurance company.