IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———

No. 00-30235

———

METROPOLITAN LIFE INSURANCE COMPANY,

Plaintiff,

v.

BELL ROOFING COMPANY, INC., ET AL

Defendants.

———————————

TRANSPORTATION INSURANCE COMPANY,

Plaintiff-Appellee,

v.

BELL ROOFING COMPANY, INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
98-CV-3175

April 23, 2001

Before, KING, Chief Judge, ALDISERT[*] and BENAVIDES, Circuit Judges.

PER CURIAM:[**]

---

* Circuit Judge of the Third Circuit, sitting by designation.

** Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Bell Roofing Company, Inc. appeals from an adverse summary judgment ruling and a decision in a bench trial in which the district court determined that Bell's loss in a construction project was not covered by its insurance carrier, Transportation Insurance Company. This appeal requires us to decide whether, under Louisiana law in this diversity case, the court properly interpreted the coverage and exclusion provisions of the insurance policy. We must decide also whether the district court abused its discretion by excluding certain exhibits proffered by the defendant and whether it properly allowed Transportation monetary credits based upon settlements entered into by Bell with other parties.

Bell entered into a contract with Transwestern Property Company to replace the roof on One Shell Square, a commercial office building located at 701 Poydras Street in New Orleans. Transwestern, the manager of One Shell Square, was acting as an agent for the building owner, Metropolitan Life Insurance Company ("Metlife"). Transportation issued an insurance policy to Bell with respect to this roofing job. The interpretation of this policy is the essence of this lawsuit.

In February 1998, prior to Bell completely replacing the roof, the roof experienced a "delamination" of significant proportion. The damage to the roof consisted of "the separation of three plies of fiberglass [felt] and an attached modified cap sheet from perlite insulation, causing an air pocket." It is undisputed that the failed roof had to be removed; however, no evidence was adduced in the district court regarding the cause of the delamination.

On September 25, 1998, Metlife sued Bell, seeking to recover losses allegedly incurred as a result of the roof's failure. Transportation also sued Bell, seeking a declaration that the insurance policy it had issued to Bell did not cover the delamination of the roof during

construction. Bell counterclaimed against Transportation seeking both a declaration that coverage existed and a monetary award to cover its losses. These two lawsuits against Bell were consolidated.

On August 2, 1999, Bell entered into a settlement with Metlife. Metlife is not a party to this appeal.

Bell filed a motion for summary judgment against Transportation. The district court denied the motion in part and, sua sponte, granted a partial summary judgment for Transportation. More specifically, the district court found that Transportation had "no liability for the damage to the three plies of fiberglass felt and the insulation." However, the district court concluded that a genuine issue of material fact remained with respect to Transportation's liability for the damaged cap sheet. Three days later, a bench trial was held to resolve the remaining issue.

At the conclusion of the bench trial, the district court stated that the construction contract between Bell and Transwestern provides that Bell, the contractor, "warrants and guarantees that title to all work covered by progress payments will pass to the owner upon receipt of such payment by the contractor." Record Excerpt #5 at 49-50. The court then stated that "the installation floater coverage form provides that your coverage will end when your interest in the covered property ceases." Id. at 50. Applying these two provisions of the construction contract and the insurance policy, the district court ruled from the bench as follows:

> Bell has been paid for everything and its interest in everything ceased, as a matter of law, under the terms of the policy and the construction contract, with the exception of ten percent of the unpaid labor that remained to be installed, minus a credit to Transportation of ten percent of the settlement proceeds received by Bell prior to the trial of this case.
>
> I am going to give judgment for Transportation, as I have indicated, subject to that credit. Because the issue was, I think, a difficult one, I'm going to let each side bear their own

3

costs . . . .

After judgment was entered, Bell moved for a new trial. The district court denied that motion on January 28, 2000. Bell filed a timely notice of appeal.

I.

The district court stated that the crux of the case is whether Bell's insurance policy covered roof failure or whether it is "a policy to protect the property that was going to be used in the installation of a roof." The court looked to language in both the insurance policy and the construction contract to determine that Bell's coverage had ceased (except for the ten percent of the labor yet to be completed or paid for) at the time the roof failure was discovered.

"[U]nder Louisiana law, general rules of contract interpretation apply. The ordinary meaning of the text governs in the absence of an absurd result, and each provision is read in light of the others. In case of ambiguity, Louisiana courts construe insurance contracts against the insurer and in favor of coverage." Williamson v. J.C. Penney Life Ins. Co., 226 F.3d 408, 409 (5th Cir. 2000) (citing Peterson v. Schimek, 729 So.2d 1024, 1028-1029 (La. 1999)). "In construing the language of an exclusionary clause in an insurance policy, we must look to the general rule that exclusionary clauses are to be narrowly construed against the insurer and in favor of coverage." LA. CIV. CODE ANN. art. 2056 (West 1987); Capital Bank & Trust Co. v. Equitable Life Assurance Soc'y of the United States, 542 So.2d 494 (La. 1989); Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La. 1983) (explaining that exclusions are to be strictly construed in favor of coverage against the insurer if more than one interpretation is

4

possible).[**] Nonetheless, "[a]lthough ambiguous provisions in insurance policies must be strictly construed in favor of finding coverage, this rule of strict construction 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.'" Hardy v. Hartford Ins. Co., 236 F.3d 287, 290-291 (5th Cir. 2001) (quoting Ledbetter v. Concord Gen. Corp., 665 So.2d 1166, 1169 (La. 1996)) (other citation omitted).

We begin by looking to the insurance policy provisions because that contract is the law between the parties. Hampton v. Thomas, 433 So.2d 884, 885 (La. Ct. App. 1983); LA. CIV. CODE ANN. art. 1901 (West 1987).

II.

The insurance policy provision, entitled "Installation Floater Coverage," defined "covered property" as:

> (1) materials, supplies, machinery, fixtures and equipment which will become a part of your installation, fabrication, or erection project;

> (2) property of others for which you are responsible and which will become a part of your installation, fabrication or erection project.

The policy further provided that Transportation would pay for direct physical loss to the covered property while (1) in transit, (2) "at a site of installation, fabrication or erection described in the Installation Floater Schedule of Coverage," and (3) "in storage awaiting installation, fabrication or erection." Additionally, the policy excludes coverage for "buildings or structures but [it] will provide coverage for Covered Property that you install, fabricate or erect in

---

[**] The insurer has the burden of proving that a loss comes within a policy exclusion. Louisiana Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250 (La. 1993).

5

connection with any buildings or structures."

The policy states that coverage ends when one of the following events first occur:

a.      this policy expires or is canceled;

b.      the Covered property is accepted by the purchaser;

c.      your interest in the Covered Property ceases;

d.      you abandon your installation, fabrication or erection project with no intention to complete it;

e.      the installation, fabrication or erection project has been completed for more than 30 days;

f.      the Covered Property is put to its intended use.

III.

Louisiana law provides that "[n]o contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured." LA. REV. STAT. ANN. § 22:614 (A) (West 1995). The statute defines "insurable interest" as "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." LA. REV. STAT. ANN. § 22:614 (B) (West 1995) . This particular definition does not require an ownership interest. Bohn v. Lousiana Farm Bureau Mut. Ins. Co., 482 So.2d 843, 853 (La. Ct. App. 1986).

We believe that the presence *vel non* of an insurable interest is critical in interpreting the provisions of the policy because the reasoning of the district court concentrated on the exclusionary provisions of the insurance policy. The court took as its starting point Paragraph 23 (e) of the Construction Contract:

6

Contractor warrants and guarantees that title to all work covered by Progress Payment will pass to Owner upon the receipt of such payment by Contractor . . .

From the Construction Contract, the court then looked at the insurance policy and concentrated on the "INSTALLATION FLOATER COVERAGE FORM," Section E(3)(c): "3. When Coverage Ceases . . . Your coverage will cease when one of the following first occur . . . c. Your interest in the Covered Property ceases."

Although the district court may be correct in finding that Bell no longer had title to the covered property, we are not persuaded that because Bell did not have title to the roofing materials that it had no "interest" in them. In Article 2758, the Louisiana Civil Code provides:

When the undertaker furnishes the materials for the work, if the work be destroyed, in whatever manner it may happen, previous to its being delivered to the owner, the loss shall be sustained by the undertaker, unless the proprietor be in default for not receiving it, though duly notified to do so.

LA. CIV. CODE ANN. art 2758 (West 1996).

We conclude that a proper interpretation of the exclusion provision of the insurance policy which is labeled, "When Coverage Ceases," must be congruent with Bell's responsibility under Louisiana law. Inasmuch as Article 2758 of the code speaks of liability irrespective of when title to the materials passes, we believe that it is improper to put an extreme restrictive interpretation on the word "interest" as did the district court. Without any explicit restrictive language in the insurance policy, we believe that "interest" must be interpreted as an "insurable interest," in accordance with Louisiana public policy dictates emphasized in § 22:614. Because the entire construction contract on the building was not completed at the time of the delaminating, Bell had an insurable interest in the materials. In light of the Louisiana statutory definition of insurable interest under § 22:614, the damage was covered by the coverage provisions of the policy and

7

was not excluded by any provision of the policy under the section "When Coverage Ceases."

IV.

Transportation argues that if we construe the insurance policy as Bell contends, the coverage would terminate "if at all, at the conclusion of some undetermined warranty period." This argument is untenable because Bell's policy specifically provides that coverage will end if, among other things, "the installation, fabrication or erection project has been completed for more than 30 days." Transportation focuses also on the language that provides that covered property means "materials . . . which *will become* a part of your installation, fabrication or erection project." (emphasis added). This passage, Transportation argues, indicates that once the materials become a part of the installation, it ceases to be covered property. However, the policy also provides that although covered property does not include buildings or structures, it "will provide coverage for Covered Property that you install, fabricate or erect in connection with any buildings or structures." The short answer to these arguments is that even if we assume that these provisions appear to be inconsistent, we must apply the doctrine of *contra proferentum* and construe the language against Transportation because it drafted these provisions.

Other passages in the insurance policy have the tendency to suggest inconsistency. On its part Bell relies on the language that defines covered property as "*property of others for which you are responsible* and which will become a part of your installation, fabrication or erection project." (emphasis added). Transportation responds that the following language ("which will become a part of your installation . . . ") indicates that once the materials become part of the roof, coverage ceases. Indeed, the district court opined that this was a "most irrational policy." Recognizing

8

this, the court stated that it "is probably one of the worst examples of the use of language in an industry that is notorious for its illiterate use of language."  Again, the polestar to determine the proper answer is that in cases of ambiguity, Louisiana courts construe insurance policies against the insurer because it drafted the language.  Peterson v. Schimek, 729 So.2d 1024,1028-1029 (La. 1999).

* * *

Accordingly, we conclude that the policy may properly be interpreted to cover the delaminated materials in the roof.

In the view we take, it does not become necessary to meet the evidentiary question presented by Bell.  Moreover, on remand, the court will consider the issue of damages anew.

The judgment of the district court is REVERSED.