729 So.2d 1024 (1999)
Ambrose PETERSON
v.
Robert A. SCHIMEK, M.D. and Lafayette Insurance Company.
No. 98-C-1712.
Supreme Court of Louisiana.
March 2, 1999.
Rehearing Denied April 9, 1999.
*1026 Geoffrey H. Longenecker, for Applicant.
Darleen M. Jacobs, Alfred A. Sarrat, Jr., William J. Wegmann, Jr., Orr Adams, Jr., for Respondent.
KNOLL, Justice.[*].
Lafayette Insurance Co. (hereafter "Lafayette") seeks relief from the granting of a motion for summary judgment finding that Lafayette's commercial liability insurance policy issued to Dr. Robert Schimek (hereafter "Dr. Schimek") provided $1,000,000 coverage for Ambrose Peterson's (hereafter "Peterson") claims on the alleged bodily injuries which gave rise to this case. The Fourth Circuit Court of Appeal affirmed the judgment in full, finding that Dr. Schimek was covered under the policy because Peterson's claim was for bodily injuries he allegedly sustained on a date the policy was in effect, at a business located in the United States of America of which Dr. Schimek was the sole owner. We affirm, concluding that under the clear and unambiguous language of the policy, the commercial liability insurance contract provides coverage to Dr. Schimek.

FACTS
Dr. Schimek, an ophthalmologist with offices in New Orleans and Metairie, Louisiana, is the owner of rental property located at 2533 River Road in Metairie. Peterson was the lessee of this property. On September 9, 1994, while Peterson was walking down the stairway of the leased premises, he was allegedly injured when he grabbed the handrail that broke, causing him to fall and suffer bodily injuries. Subsequently, Peterson *1027 filed a petition for damages for his alleged injuries.
On the date of the accident, Lafayette had two liability insurance policies in effect in favor of Dr. Schimek. The first policy, Lafayette Dwelling Policy No. 73-710 543 (hereafter the "Dwelling Policy"), contained a "Landlord Premises Liability Endorsement" providing $100,000 maximum coverage per occurrence for bodily injury and property damage. It is undisputed by all parties that this policy provided coverage for Peterson's alleged injuries. The second policy, and the subject of this writ, is Lafayette Premises Commercial Uni-Saver Policy No. 88-112 700 (hereafter the "Commercial Liability Policy"). This policy provided $1,000,000 maximum coverage per occurrence for personal injury sustained on business property of which Dr. Schimek was the sole owner. Peterson and Dr. Schimek both contended that the Commercial Liability Policy provided additional coverage for Peterson's claims. Lafayette contended that coverage under the Commercial Liability Policy was limited to those buildings listed on the declarations page and to the liability of Dr. Schimek as the sole owner of his medical businesses.[1] As such, Lafayette asserted that coverage of the alleged accident is limited to the Dwelling Policy covering the rental property.[2] The policy at issue did not, however, specify the type of business insured, limit coverage to the properties scheduled on the declarations page, or restrict coverage to a specified number of business properties.

PROCEDURAL HISTORY
On December 8, 1994, Peterson filed suit as a result of his alleged injuries, naming Dr. Schimek and Lafayette as defendants. Thereafter, Peterson filed a motion for partial summary judgment urging that under LA.CODE CIV.P. art. 966(B), summary judgment may be rendered solely on the issue of insurance coverage. Peterson moved for a judgment finding that Dr. Schimek was insured under the Commercial Liability Policy[3] up to the full policy limits for the accident in question. Lafayette also moved for partial summary judgment, arguing that the Dwelling Policy constituted the only coverage available to Dr. Schimek for Peterson's claims. Lafayette also asserted that the Commercial Liability Policy did not provide coverage for the plaintiffs accident as the parties intended it to cover only Dr. Schimek's medical practice for general liability exposure. Dr. Schimek joined in the hearing supporting Peterson's motion for summary judgment and opposing Lafayette's motion. The trial court granted Peterson's motion, denied Lafayette's motion, and decreed that the Commercial Liability Policy provided $1,000,000 coverage and that the Dwelling Policy provided $100,000 coverage for Peterson's alleged bodily injuries.
The trial court noted that no specific provision of the Commercial Liability Policy excluded coverage for the negligent acts of Dr. Schimek with respect to the property leased to Peterson. Further, the court found that, by the terms of the contract, Lafayette was obligated to pay the sums that Dr. Schimek became legally obligated to pay as damages because of bodily injury caused by an occurrence in the coverage territory. The court also found that the policy defined "occurrence" and that the coverage territory as defined in the policy was "the United States of America." Accordingly, the trial court concluded that because the rental property was located within the coverage territory of the policy, the Commercial Liability Policy provided coverage up to the limits of $1,000,000. Lafayette filed motions for rehearing and a new trial, which the trial court denied.
The court of appeal affirmed the trial court's judgment finding that when the insurance contract was read as a whole, coverage *1028 clearly existed on the date of the accident, that damages due to bodily injury were covered, that the coverage territory was the United States of America, and that an insured was covered for the conduct of a business for which he was the sole owner. The court noted that because the language of the policy was clear and unambiguous, and led to no absurd consequences, the court would look no further than the policy itself to determine the parties' intent. Thus, the court of appeal rejected Lafayette's argument to reform the insurance contract according to Lafayette's contention of the parties' intent. Peterson v. Schimek, 97-2801 (La.App. 4 Cir. 6/2/98), 715 So.2d 503, 505.
On writ to this Court, Lafayette contends that the lower courts erred in granting summary judgment in favor of Peterson and in finding that the Commercial Liability Policy provided coverage to Dr. Schimek because the policy was written to cover only Dr. Schimek's medical business at the two properties listed on the declarations page. In support of its argument, Lafayette relies on the name of the insured as a doctor, "Schimek Robert A., Dr." and the policy's language "but only with respect to the conduct of a business of which you are the sole owner," to demonstrate that only the medical businesses of Dr. Schimek were covered.
Peterson and Dr. Schimek both opposed the writ and urged this Court to affirm the judgments below. Both argue that the trial court correctly found coverage under the Commercial Liability Policy according to the clear and unambiguous terms of the policy. They counter that Lafayette's argument regarding the parties' intent is an inappropriate after-the-fact attempt to reform the contract to contradict the policy's clear language. They point out that nothing in the Commercial Liability Policy purports to limit coverage to Dr. Schimek's medical practice. Further, Dr. Schimek notes that Lafayette's attempt to reform the insurance contract violates public policy by adversely affecting his right to indemnity and protection, Peterson's right to recover after the occurrence of injury, and invites litigation regarding the parties' intentions.
We granted this writ to further consider the issues. Peterson v. Schimek, 98-1712 (La.10/30/98), 723 So.2d 965, 1998 WL 951050. This case presents two issues for our determination. First, we must determine whether the lower courts erred in granting Peterson's motion for summary judgment finding that coverage existed under the Commercial Liability Policy. Second, we must determine whether the lower courts erred in refusing to reform the Commercial Liability Policy. For the following reasons, we affirm.

LAW AND ANALYSIS
An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship. LA. CIV.CODE art.1983. As such, courts are guided by certain principles of construction and should interpret insurance policies the same way they do other contracts by using the general rules of contract interpretation as set forth in our Civil Code. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96); 665 So.2d 1166, 1169; Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736. The purpose of liability insurance is to afford the insured protection from damage claims. Insurance contracts, therefore, should be interpreted to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148 (La.1993). The extent of coverage is determined from the intent of the parties as reflected by the words of the insurance policy. Ledbetter, 665 So.2d at 1169. The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the insured and insurer as reflected by the words in the policy. LA.CIV.CODE art.2045; Ledbetter, 665 So.2d at 1169. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent. LA.CIV.CODE art.2046; Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991).
Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired *1029 a technical meaning. LA.CIV.CODE art.2047; Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991). Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d at 764. An insurance contract is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions. LA.CIV.CODE art. 2050; Central La. Elec. Co., 579 So.2d at 985. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. Valentine v. Bonneville Ins. Co., 96-1382 (La.3/17/97), 691 So.2d 665; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. Ledbetter, 665 So.2d at 1169; Reynolds, 634 So.2d at 1183. If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who furnished the policy's text and in favor of the insured finding coverage. LA.CIV.CODE art. 2056; Crabtree, 632 So.2d at 741. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741. With these principles in mind, we now turn to a review of the insurance policy at issue.
The Commercial Liability Policy issued to Dr. Schimek provides in pertinent part:
We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" ... to which this insurance applies .... The "bodily injury" ... must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory."
. . . .
Damages because of "bodily injury" include "damages claimed by any person or organization for care, loss or services or death resulting at any time from the "bodily injury."
. . . .
If you are designated in the Declarations as:
a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
. . . .
"Coverage territory" means:
a. The United States of America (including its territories and possessions), Puerto Rico and Canada;
. . . .
"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
. . . .
"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
Lafayette contends that the parties wrote the Commercial Liability Policy to cover Dr. Schimek's medical businesses listed on the declarations page, affording coverage for his "business personal property" and extending liability coverage to him "but only with respect to the conduct of your business." However, the policy language is not that restrictive and Lafayette misquotes their own policy. Instead, the policy's provisions are broad and clearly extend liability coverage to Dr. Schimek as an insured "with respect to the conduct of a business of which [he is] the sole owner." While Lafayette correctly notes that only Dr. Schimek's medical offices are listed on the declarations page, *1030 we must look at the policy as a whole and not just specific provisions in the insurance contract's declarations page to determine the actual agreement between the insured and insurer. Lafayette plays off this broad definition as one clearly understood by the insurance industry, and as one interpreted by the courts as restrictive to the business being insured. We are not persuaded by this argument.
The four corners of the insurance contract, when read as a whole and in context, do not restrict coverage to Dr. Schimek's medical business or his offices listed on the declarations page. No where in the policy is there language which restricts coverage to Dr. Schimek's medical businesses only. The Commercial Liability Policy constitutes the law between Dr. Schimek and Lafayette, and the nature of their relationship and what obligations are owed is governed by that agreement. It is clear from the insurance contract that, while the policy was in effect, Lafayette is obligated to pay all sums that Dr. Schimek becomes legally obligated to pay as damages because of bodily injury caused by an occurrence in the coverage territory to which the Commercial Liability Policy applies. Peterson alleges that while walking down the stairway of the premises he leased from Dr. Schimek, he was injured when he grabbed the handrail that broke, causing him to fall and suffer bodily injuries. Thus, Peterson clearly alleges an "occurrence" as defined by the policy. The petition sufficiently states that this was an accident caused by the alleged negligence of Dr. Schimek as the lessor. Further, the injuries Peterson allegedly suffered are "bodily injuries" as defined by the policy. An occurrence is simply an "accident" and the coverage territory includes the "United States of America." The alleged accident likewise occurred in the coverage territory, i.e., the United States of America, as the leased premise at which the alleged accident occurred is located in Metairie, Louisiana. Finally, Dr. Schimek qualifies as an insured under the policies' terms as he is an individual and the sole owner of the premise leased to Peterson in connection with this suit. Accordingly, we conclude that under the clear and explicit terms of the Commercial Liability Policy, the insurance contract provided coverage to Dr. Schimek. Therefore, we find that the lower courts did not err on this issue.

Contract Reformation
We now turn to Lafayette's alternative argument, whether we should reform the insurance contract to conform with the parties' intent. Lafayette urges this Court, in the event that we find that the Commercial Liability Policy provides coverage, to reform the insurance contract to conform with the parties' intent of providing coverage only to Dr. Schimek's medical practice at the two locations scheduled in the policy.
As evidence of their intent, Lafayette points out that the only properties listed on the declarations page of the policy are Dr. Schimek's medical office buildings. Also, on Dr. Schimek's applications for the Commercial Liability Policy, Dr. Schimek listed the nature of his business as "Office" and "Office/Ophthalmologist." In addition, Dr. Schimek answered on the applications that he did not "own, operate, or have any interest in other businesses or commercial properties." Further, Lafayette contends that because the Commercial Liability Policy insured "Schimek Robert A., Dr." "but only with respect to the conduct of a business of which you are the sole owner," the policy covered only the liability of Dr. Schimek as the sole owner of his medical business and medical office buildings scheduled in the policy. Additionally, Lafayette points out that the uncontradicted testimony of Dr. Schimek's insurance agent, Richard Shields, who testified that Dr. Schimek knowingly and expressly rejected the higher liability limits contained in the Commercial Liability Policy and instead elected to purchase the lower limits contained in the Dwelling Policy, that the Commercial Liability Policy covered only personal property and liability with respect to Dr. Schimek's medical business, that Lafayette would not even write a liability policy for investment property higher than $300,000, and that excess coverage offered to Dr. Schimek would not have been placed with Lafayette.
Whether the application is part of the insurance contract is determined by the parties' intent as reflected by the words *1031 in the policy. La.R.S. 22:654entitled "Construction of policies"provides:
Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.[4]
La.R.S. 22:654, by its clear wording, limits our inquiry in this case solely to the Commercial Liability Policy and any "application attached to or made a part of the policy." An application may become part of the insurance contract if sufficiently attached to or incorporated in the policy; however, the intent to make the application part of the insurance contract must be clearly expressed on the face of the policy. The Commercial Liability Policy provides, in pertinent part:
6. Representations.
By accepting this policy, you agree:
a. The statements in the Declarations are accurate and complete;
b. Those statements are based upon representations you made to us; and
c. We have issued this policy in reliance upon your representations.
The Commercial Liability Policy by its own terms does not clearly incorporate or otherwise express an intent on the part of the insured and insurer to incorporate the applications for insurance as a part of the insurance contract. Indeed, the policy does not even mention or refer to the applications. Instead, the policy by its clear and explicit terms refers to statements based on representations in the declarations page.[5] By failing to clearly express an intention to make the applications a part of the contract, the effect is that the applications and their representations have no contractual force and are not considered part of the contract. LA.CIV. CODE art.2046; LA.CIV.CODE art.1983; La. R.S. 22:654; Gonsalves v. Dixon, 487 So.2d 644 (La.App. 4 Cir.1986); Ledoux v. Old Republic Life Ins.Co., 233 So.2d 731 (La.App. 3 Cir.), writ denied 256 La. 372, 236 So.2d 501 (1970); LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE, § 18:1, at 18-4 (3d ed.1997). A contract must be interpreted within its "four corners" whenever the words of the contract are clear, explicit, and lead to no absurd consequences. When those conditions are met, a court is prohibited from taking parol evidence to explain or contradict the clear meaning of the contract. To allow Lafayette to rely upon the applications would be to allow it to present parol evidence to vary the terms of the contract which it prepared. Because the contract is clear, explicit, and leads to no absurd consequences, the contract is strictly interpreted as written.
The Commercial Liability Policy governs the relative rights and obligations of the parties and we cannot interpret the policy's provisions to restrict its provisions beyond what is reasonably contemplated by its unambiguous terms. Interpreting the contract as written, Lafayette did not limit coverage of the Commercial Liability Policy to Dr. Schimek's medical practice at the two locations scheduled in the policy. Concluding that the applications were not incorporated by a clear expression of the parties leads to no absurd consequences and gives effect to the long-standing public policy of this State that the insured always be in possession of the entire evidence of the insurance contract and protected against misrepresentations that he did not make.[6]See, e.g., Spain v. *1032 Travelers Ins. Co., 332 So.2d 827 (La.1976) (concluding that legislative policy prohibits use of writings not in some manner physically made a part of the policy and assure full notification to the insured of all relevant provisions of his insurance contract); Lindsey v. Colonial Lloyd's Ins. Co., 595 So.2d 606 (La.1992) (same).
We likewise reject Lafayette's invitation to reform the insurance contract's clear and explicit provisions through use of other parol evidence. Specifically, Lafayette points to the uncontradicted testimony of Dr. Schimek's insurance agent. This testimony, in Lafayette's opinion, evidences the parties' intent to limit the Commercial Liability Policy's coverage to Dr. Schimek's medical businesses only. We find, however, that the lower courts did not err in refusing to reform the insurance contract in conformity with Lafayette's parol evidence to vary the terms of the clear and explicit contract which it prepared.
The interpretation of this insurance contract poses no new issues. The interpretation of contracts is well established in our laws and jurisprudence, which our courts have steadfastly maintained. Parole evidence cannot be introduced when the provisions of an insurance contract are clear and explicit, and lead to no absurd consequences; courts must enforce the contract as written. LA.CIV.CODE art.2046. Furthermore, courts are prohibited from taking parol evidence to explain or contradict the insurance contract's clear meaning. LA.CIV.CODE art. 1848.[7] The Commercial Liability Policy is an act under private signature; therefore, under LA.CIV. CODE art.1983, the insurance contract is full proof of the agreement and is the law between the insured and insurer. The meaning and intent of the parties must be sought within the four corners of the insurance contract and cannot be explained or contradicted by parole evidence. LA.CIV.CODE art. 1848. We find no ambiguity in the clear and explicit terms of the Commercial Liability Policy that would allow us to utilize the parole evidence offered by Lafayette.
Furthermore, even assuming that any ambiguity existed, it would be solely caused by Lafayette's structure of the insurance contract form, and no resort to extraneous evidence, such as the testimony of Lafayette's insurance agent and Dr. Schimek's applications, showing the alleged intent of the insured and insurer, is necessary. The civil law has well-developed codal law and jurisprudential doctrines for interpreting contracts providing that parol evidence is not admissible to vary the terms of a written document unless fraud, error or duress are alleged. LA.CIV.CODE art. 1848. Lafayette advanced the testimony of Lafayette's insurance agent to support its interpretation of the alleged ambiguity in the Commercial Liability Policy. However, under LA.CIV.CODE art.2056, the ambiguity must be construed against the maker, Lafayette. Construing against the maker herein means that Lafayette has failed to prove that the Commercial Liability Policy excluded coverage to Dr. Schimek for Peterson's alleged bodily injuries caused by an accident arising out of his sole ownership of the rental property business. Accordingly, we find that the lower courts' did not err in rejecting to reform the insurance contract.

DECREE
For the foregoing reasons, the judgment of the court of appeal granting Peterson's motion for summary judgment and denying Lafayette's motion is affirmed, and the case is remanded to the trial court for further proceedings.
JUDGMENT AFFIRMED AND CASE REMANDED.
*1033 LEMMON, J. dissents and assigns reasons..
VICTORY, J., dissents.
LEMMON, J., Dissenting.
I disagree with the majority's conclusion that Dr. Schimek's application for insurance cannot be considered in determining coverage under the liability policy.
The record in this case contains both the policy and the application, which were filed together by Lafayette Insurance Company as attachments to the motion for summary judgment. The application arguably was attached to the policy, but at least it is unclear whether or not the application was attached to or made part of the policy. Plaintiff in his motion for summary judgment neither asserted that the application was not attached to the policy nor denied that the application was attached. Therefore, there is at least an issue of material fact that defeats summary judgment.
If so, Dr. Schimek represented in his application that he was an ophthamologist and that he had no other business than his medical practice, and the premiums were calculated and the policy was issued in reliance on this representation, as shown by the testimony of the agent.[1] When this representation is considered, the policy covered Dr. Schimek only with respect to the conduct of his business as an ophthamologist and not with respect to the conduct of any other business.[2]
The judgments of the lower courts should be reversed.
NOTES
[*] Kimball, J., not on panel. See Rule IV, Part 2, § 3.
[1] The Commercial Liability Policy's declaration page lists Dr. Schimek's buildings as 4224 Houma Boulevard, Metairie, Louisiana; and 3217 Canal Street, New Orleans, Louisiana. However, the policy does not describe the premises as medical office buildings. Instead, the declarations page lists the form of business as "individual."
[2] Neither party contested whether either the Dwelling Policy or the Commercial Liability Policy were in effect on the date of the accident.
[3] Typically, a commercial general liability policy provides coverage under a broad insuring agreement with certain specific risks excluded.
[4] La.R.S. 22:654 is known as an "Entire Contract Policy" statute. See, e.g., Citgo Petroleum Corp. v. Yeargin, Inc., 95-1574 (La.App. 3 Cir. 2/19/97), 690 So.2d 154.
[5] Because the provision entitled "Representations" does not expressly refer to the applications, this Court cannot alter the clear and explicit terms of the Commercial Liability Policy and add into the contract what the parties left out, making a new contract where the terms clearly express the parties intent. Instead, to read into subsection c the term "applications" is to construe that portion of the policy at the expense of others and to create an ambiguity where none exists to make a new contract. LA. CIV.CODE art.2050; Valentine, 691 So.2d at 665; Ledbetter, 665 So.2d at 1169.
[6] Furthermore, even if a copy of the application is attached to or otherwise made a part of the policy when issued and delivered to the insured, a misstatement will only provide a defense if the insurer proves that the representation materially affects the risk and that the insured made the false statement with the intent to deceive. See La.R.S. 22:619(B); Darby v. Safeco Ins. Co. of Am., 545 So.2d 1022, 1025 (La.1989); LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE, § 18:13, at 18-17 to 18-20 (3d ed.1997). Despite the legislative use of the disjunctive "or" in La.R.S. 22:619, Louisiana jurisprudence has consistently interpreted the requirements of the statute as conjunctive. See, e.g., Gay v. United Benefit Life Ins. Co., 233 La. 226, 96 So.2d 497, 498-99 (1957).
[7] Louisiana Civil Code article 1848 provides: "Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or act under private signature." Neither party contests whether the insurance contract is an act under private signature. See LA.CIV.CODE art. 1837.
[1] At the least, any dispute regarding reliance should be resolved by trial on the merits and not by summary judgment.
[2] I also raise, but do not reach in dissent, the question whether this "Premises Commercial Uni-Saver Policy" (emphasis added), which lists only two specific premises, can reasonably be interpreted to insure every other premise in the United States owned by the insured. This may be a case where the policy simply does not purport to grant coverage.