# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**05-192**

**CAROLYN E. MYLES, ET AL.**

**VERSUS**

**CONSOLIDATED COMPANIES, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NUMBER 61715-B
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MICHAEL G. SULLIVAN**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Jimmie C. Peters, Michael G. Sullivan, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

J. Wendel Fusilier
Marcus L. Fontenot
Post Office Box 528
Ville Platte, Louisiana 70586
(337) 363-6661
Counsel for Plaintiffs/Appellees:
    Vivian Fontenot
    Carolyn E. Myles
    Vivian E. Fontenot
    Leticia Monique Lastrapes
    Roylee Edwards
    Lillie Mae Edwards
    Angela M. Edwards

John W. Penny, Jr.
Post Office Box 2187
Lafayette, Louisiana 70502
(337) 231-1955
Counsel for Defendant/Appellee:
    Consolidated Companies, Inc.

Patrick J. Briney
Briney & Foret
Post Office Box 51367
Lafayette, Louisiana 70505-1367
(337) 237-4070
Counsel for Defendant/Appellant:
        Clarendon National Insurance Company

Mark W. Smith
Berit A. Reiss
3838 N. Causeway Boulevard, Suite 3095
Metairie, Louisiana 70002
(504) 830-7660
Counsel for Defendants/Appellees:
        Consolidated Companies, Inc.
        Ryder Truck Rental, Inc.
        Jeffery Ashley

SULLIVAN, Judge.

Clarendon Insurance Company (Clarendon) appeals the trial court's grant of summary judgment in favor of its insured, Consolidated Companies, Inc. (Conco), that Clarendon's policy number DS0000017278 provided excess "hire" liability coverage in favor of Conco's delivery trucks. We affirm.

*Facts*

Conco is a wholesale grocery delivery business that makes deliveries to three states: Louisiana, Texas, and Arkansas. In 1978, Conco executed a lease agreement with Ryder Truck Rentals (Ryder) in which it agreed to lease all of the trucks and trailers it needed in its business from Ryder. In 1992, the parties renewed this lease, and Conco has continued to operate in this fashion since its renewal.

Prior to 1995, Conco secured its primary liability coverage for the trucks and trailers it rented from Ryder through Deep South Surplus Lines, Inc. (Deep South). During that time, Deep South was the underwriter and general managing agent for Homestead Insurance Company (Homestead). Homestead provided primary liability and other common types of coverage for the trucks and trailers hired by Conco from Ryder.

In 1995, Deep South became the general managing agent of Clarendon, acting as its agent and/or principal. At this time, Clarendon and Ryder both sought to provide Conco with the primary liability and other coverages that it previously purchased from Homestead. Clarendon also submitted a bid to provide liability coverage on an automobile leased from Enterprise Leasing for one of Conco's executives. This bid included excess coverage for "hired" and "non-owned" vehicles. Conco purchased primary coverage for its trucks and trailers from Ryder and

1

purchased coverage for the executive automobile leased from Enterprise Leasing from Clarendon. Clarendon's policy included excess "hired" and "non-owned" coverage for "hired" and "non-owned" vehicles. Conco renewed this policy annually.

On January 21, 2000, Jeffery Ashley, an employee of Conco who was driving one of the trucks Conco leased from Ryder, allegedly struck another vehicle and caused Plaintiffs, Vivian Fontenot, individually and as provisional curatrix for Carolyn E. Myles, Lillie Mae Edwards, Angela M. Edwards, Vivian E. Fontenot, Leticia Monique Lastrapes, and Roylee Edwards, to suffer various injuries. Plaintiffs filed suit against: Mr. Ashley; Conco; Ryder; Old Republic Insurance Company, which provided $1,000,000.00 in primary liability coverage to Conco on this truck; and Reliance Insurance Company (Reliance), which provided an additional $20,000,000.00 in primary coverage as Conco's umbrella carrier. Reliance became insolvent, filed for receivership, and was liquidated. Plaintiffs then amended their petition and added Clarendon as Defendant, alleging that it provided Conco with $1,000,000.00 in excess liability coverage on the vehicles it leased from Ryder. Conco made demand upon Clarendon to provide this excess coverage; Clarendon refused, asserting it did not provide liability coverage on vehicles Conco leased on a *long-term* basis from Ryder. Clarendon admitted it owed Conco "hired/non-owned" coverage, but only "on those few occasions when Conco's employees might rent a car or truck on a short-term basis for the company's business," such as when one of its traveling sales agents rented a car from the airport.

The policy provides that "hired" autos to be covered includes "(o)nly those 'autos' you lease, hire, rent or borrow. This does not include any 'auto' you lease, hire, rent, or borrow from any of your employees or partners or members of their households." The policy further provides that "non-owned" autos are "(o)nly those

2

autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your employees or partners or members of their households but only while used in your business or your personal affairs."

On May 2, 2003, Conco filed a motion for summary judgment, asserting that Clarendon owed it excess liability coverage on the truck driven by Mr. Ashley at the time of the accident. On May 6, 2003, Clarendon filed: (1) an answer to Plaintiffs' petition for damages; (2) a cross-claim against Conco for a declaratory judgment in which it requested a declaration that its policies, in effect from August 31, 1995 through August 31, 2002, did not afford coverage to Conco for any vehicle it leased from Ryder on a long-term basis; and (3) alternatively, a cross-claim against Conco for unpaid premiums, attorney fees, and costs, if the trial court found that it owed Conco coverage under the "hired/non-owned" provision of the policies. The trial court granted Conco's motion for summary judgment, finding that Clarendon's policy provided coverage for all the vehicles Conco leased from Ryder on a long-term basis, including the truck involved in the January 21, 2000 accident.

On appeal, Clarendon contends that the trial court erred when it granted Conco's motion for summary judgment: (1) by interpreting the written terms of its insurance policies without considering parol evidence that could reveal which vehicles the parties actually intended the policy to cover, especially given its allegations of fraud and other vices of consent; (2) by making an impermissible credibility determination; and (3) by interpreting the policy in a manner that results in an absurd result and fails to give certain words in the policy their technical meanings. Clarendon also seeks reformation of the policy.

3

## Standard of Review

We review summary judgments *de novo*, asking the same questions the trial court previously asked in determining whether summary judgment is appropriate. *Champagne v. Ward,* 03-3211 (La. 1/19/05); 893 So.2d 773. This inquiry seeks to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of a legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751, *quoting S. La. Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writs denied*, 596 So.2d 211 (La.1992). If issues regarding subjective facts are present, such as intent, knowledge, motive, malice, or good faith, a summary judgment determination is usually not appropriate. *Murphy's Lease & Welding Serv., Inc. v. Bayou Concessions Salvage, Inc.*, 00-978 (La.App. 3 Cir. 3/8/01), 780 So.2d 1284, *writ denied*, 01-1005 (La. 6/1/01), 793 So.2d 195. Credibility determinations are also inappropriate in summary judgment procedure. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So.2d 764. "[T]he trier of fact who has the opportunity to hear all the evidence and to observe the witnesses" should make such determinations. *Belgard v. Am. Freightways, Inc.*, 99-1067, p. 5 (La.App. 3 Cir. 12/29/99), 755 So.2d 982, 986, *writ denied*, 00-293 (La. 3/31/00), 756 So.2d 1147.

## Insurance Contract Interpretation

An insurance contract is a conventional obligation that constitutes the law between the insured and insurer. *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024. Certain principles of construction guide the interpretation of contracts; insurance contracts are interpreted in the same manner as other contracts. *Id*.

4

"The purpose of liability insurance is to afford the insured protection from damage claims. . . . The extent of coverage is determined from the intent of the parties *as reflected by the words of the insurance policy*." *Id.* at 1028 (emphasis added). Accordingly, we look to the words of the contract to determine the common intent of the insured and insurer. *Id.* "When the words of an insurance contract are clear and explicit and lead to no absurd consequences," the policy must be enforced "as written," and courts "may make no further interpretation in search of the parties' intent." *Id.*

If the intent of the parties can be construed from the four corners of the policy, as a matter of law, no question of contractual interpretation exists, and summary judgment is appropriate. *Id.* In such cases, the parties to the contract cannot introduce parol evidence to explain or contradict their intent. La.Civ. Code art. 1848. However, Article 1848 further provides:

> Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.

The vices of consent are error, fraud, and duress. La.Civ.Code art. 1948. Our jurisprudence has also recognized that parol evidence is admissible between the contracting parties: (1) to prove fraud, mistake, want or failure of consideration, and illegality; (2) to explain an ambiguity when such explanation is consistent with the written terms; or (3) to show that the writing is only a part of an entire oral contract between the parties. *Scafidi v. Johnson*, 420 So.2d 1113 (La.1982).

Clarendon alleged, in its cross-claim for declaratory relief filed on May 6, 2001, that Conco *fraudulently* and intentionally withheld: (1) its intent to acquire liability insurance coverage on the vehicles it leased on a long-term basis from Ryder;

5

(2) facts material to Clarendon's acceptance of the terms of these insurance policies; and (3) its desire to have "hired/non-owned" coverage on the fleet of vehicles it leased on a long-term basis from Ryder in an attempt to avoid the risk of cancellation of these policies and to avoid paying a substantial premium. Clarendon further alleges that, if it knew these facts beforehand, it would not have executed these insurance policies. Because of its allegations of fraud, Clarendon contends the trial court should have considered parol evidence to ascertain the parties' true intent.

The trial court held that the policy was written in clear terms which did not lead to an absurd result and refused to consider parol evidence to expand them. In its reasons for judgment, the trial court stated:

> It is the position of the Court that the wording of the [insurance] contract is unambiguous. Clarendon simply did not get as good a deal as it hoped and Conco got a better deal than anticipated. The Court cannot look beyond the contract itself nor can it alter the terms of the contract under the present situation. The holding in Peterson v. Schimek, 729 So.2d 1024 (La.1999) demands this ruling and is applicable to the present case.
>
> The only exception to the principles [stated] above would be a situation in which the words of the contract would lead to an absurd consequence. While it is true that a very small fee was charged by Clarendon for the hired and non-owned coverage, this was a business decision made by experienced professionals. In hind sight, it was a bad deal, but not absurd.
>
> Consequently, it is necessary to interpret the contract from the four corners of the instrument. Such an interpretation requires a finding that coverage exists and applies to the situation posed by the present action. Summary Judgment must be granted in favor of Conco.

The trial court erred when it stated that there is only one exception to the parol evidence rule; this error has no impact on our determination.

Evidence submitted in support of Conco's motion for summary judgment establishes that Clarendon sought to provide Conco two different types of policies. One policy would provide primary liability coverage on the trucks and trailers leased

6

from Ryder, and another policy would provide primary coverage on a leased executive vehicle and excess coverage for Conco's "hired" and "non-owned" vehicles. Knowing the full nature of Conco's business and the differences in the insurance coverage sought, Clarendon issued its Business Auto policy to Conco without exempting the coverage at issue. This was error on Clarendon's part, not fraud on Conco's part. Furthermore, Conco's efforts to enforce the contract as written do not constitute fraud.

Clarendon next urges that the trial court made a speculative assumption of credibility. The following passage from the trial court's reasons for judgment is the basis of this argument:

> Clarendon would have the Court believe that it was duped by Conco and that Conco intentionally lured it into a deal to provide additional coverage at either low or no cost. This position is very hard to accept in light of the fact that Clarendon is an established, experienced business dealing exclusively with insurance and Conco is a grocery delivery business. Surely any advantage in negotiations would have belonged to Clarendon.

The trial court's comments are its perception of the bargaining power of the respective parties. We do not agree with the observations and do not believe the evidence supports them. However, the comments are harmless because they are not credibility determinations. There is no indication in these comments that the trial court found any of Conco's witnesses or evidence more credible than Clarendon's.

Clarendon next argues that the trial court's ruling leads to the absurd consequence of Conco having purchased $2,000,000.00 in coverage for an absurdly low premium. Any absurdity in the premium sought and collected is due to Clarendon's own error: it failed to write the policy to accurately reflect the coverage it was providing Conco. Clarendon's error cannot serve as the basis to look beyond the clear terms of the policy it wrote.

7

Lastly, Clarendon contends that the terms "hire" and "owned" as used in Conco's policy are technical terms in the context of this policy. Clarendon explains that, in the insurance industry, "owned" vehicles include vehicles leased for a period of one year or more. Therefore, coverage for "hired" and "non-owned" vehicles applies only to vehicles that are leased short-term and not the trucks and trailers Conco leased from Ryder.

In *Peterson*, 729 So.2d 1024, the defendant insurer made a similar argument. The policy's declaration page listed only the insured's medical offices and not the rental property that he argued was also covered by the defendant's liability policy; the insurer argued that the policy language limited liability coverage to the insured's medical business only. *Id.* The supreme court rejected the argument, stating:

> While [the insurer] correctly notes that only Dr. Schimek's medical offices are listed on the declarations page, we must look at the policy as a whole and not just specific provisions in the insurance contract's declarations page to determine the actual agreement between the insured and insurer. [The insurer] plays off this broad definition as one clearly understood by the insurance industry, and as one interpreted by the courts as restrictive to the business being insured. We are not persuaded by this argument.

*Id.* at 1029-30. "Hired" is defined in the policy. Nothing in the definition, or anywhere else in the policy, indicates that the term is to be understood in any way other than that definition. We find no merit in this argument.

### *Reformation*

Clarendon seeks to have its policy reformed to reflect the true intent of the parties. As discussed above, Clarendon's policy clearly provides coverage for Plaintiffs' claims, and there is no basis for us to consider the parol evidence Clarendon submitted in opposition to Conco's motion for summary judgment. Accordingly, we reject Clarendon's request to reform the policy.

8

***Disposition***

Judgment in favor of Conco is affirmed.  This case is remanded to the trial court for further proceedings.  All costs of this appeal are assessed to Clarendon.

**AFFIRMED.**