# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-689


**BRIAN K. DUPLICHAN, ET UX.**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. 2009-0276
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**DAVID E. CHATELAIN\***
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
David E. Chatelain, Judges.


**REVERSED AND REMANDED.**

---

\*Honorable David E. Chatelain participated in this decision by appointment
of the Louisiana Supreme Court as Judge Pro Tempore.

**J. Craig Jones**
**Jones & Hill, LLC**
**131 Highway 165 South**
**Oakdale, LA 71463**
**(318) 335-1333**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Brian K. Duplichan, as Natural Tutor of his Minor Child, Kadie Duplichan**

**H. David Vaughan, II**
**Plauche, Smith, & Nieset, LLC**
**P. O. Drawer 1705**
**Lake Charles, LA 70602-1705**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **State Farm Mutual Automobile Insurance Company**

**CHATELAIN, Judge.**

The plaintiff, Brian Duplichan, the natural tutor of his minor child, Kadie E. Duplichan (Kadie), appeals the trial court's judgment granting State Farm Mutual Automobile Insurance Company's (State Farm) motion for summary judgment. For the following reasons, we reverse and remand this matter to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On March 29, 2007, Kadie and her mother, Sarah Spears (Spears), were passengers in a vehicle driven by Beverly B. Hooper (Hooper). Hooper drove her vehicle off the road into a ditch and struck a culvert, seriously injuring Spears and Kadie. Spears survived for a short time after the accident but ultimately died from her injuries; Kadie, though injured, survived the accident.

At the time of the accident, Kadie and Spears lived with Mary Elizabeth Reeves (Reeves), Spears's mother. When the accident occurred, Reeves had a State Farm insurance policy which provided under-insured motorist bodily injury (UMBI) coverage. The dispute in this case is over the amount of Reeves's UMBI insurance coverage.[1] State Farm asserts that Reeves's UMBI policy was for $25,000, while the plaintiff claims Reeves's UMBI policy was for $1,000,000.

The plaintiff sued State Farm, seeking the maximum payment of UMBI. After answering the lawsuit, State Farm tendered $25,000, what it considered the full amount of the policy, and then filed a motion for summary judgment on the grounds that its UMBI policy was exhausted.

On December 16, 2013 and April 17, 2014, the trial court heard State Farm's motion for summary judgment. At the first hearing the trial court requested

---

[1] The parties do no dispute the existence of the UMBI policy or that Kadie is entitled to recover under the policy. Likewise, we note that Safeway Insurance Company (Safeway) insured Hooper under a policy that provided the minimum amount of liability coverage. Safeway paid its policy limits to the plaintiff.

evidence about the premiums Reeves paid; this evidence was introduced at the second hearing. At the conclusion of the April 17 hearing, the trial court took the matter under advisement.

On May 1, 2014, the trial court granted State Farm's motion for summary judgment. In its written reasons for judgment, the trial court stated:

> After a review of the evidence, the court finds that there are no genuine issues of material fact to deny defendant's motion for summary judgment.
>
> State Farm has produced a certified copy of the policy issued to Mary Reeves, # 80 4927-D02-18C, which provided UMBI coverage of $25,000 per person and $50,000 total per accident. The agent's notes show that the policy was prepared at the request of Mary Reeves, stating as the reason for the change: "Mary is not working at this time." The new policy was subsequently issued to Mary Reeves and mailed to her home, based on the certificate filed by State Farm. The policy's effective dates were February 22, 2007, to October 2, 2007. Additionally, the policy references that it replaces policy, # 80 4927-D02-18B. State Farm also produced evidence that Mary Reeves received credit for the former higher premium that was previously paid for on February 22, 2007, which coincides with Reeves'[s] request to reduce the policy limit. Further, Mary Reeves accepted this credit on April 10, 2007, when she paid 50% of the new, reduced premium minus the credit given for changing from the more costly $1,000,000 UMBI premium to the 25,000/ $50,000 UMBI premium, as shown in the Premium History document.
>
> Plaintiff has offered the affidavit of Mary Reeves and an uncertified Auto Renewal document for policy # 80 4927-D02-18A as evidence. Mary Reeves states in her affidavit that she never requested a change to her policy affecting the premiums and that she never received a new policy in the mail. Mary Reeves claims that the policy # 80 4927-D02-18A was the policy in place at the time of the accident which gave rise to this suit, as evidenced by her Auto Renewal document.
>
> Mary Reeves'[s] affidavit does not present a genuine issue of material fact. Insurance policies are to be interpreted by the court under the contractual interpretation statutes in the [C]ivil [C]ode. *Peterson v. Schimek*, 729 So.2d 1024 (La. 1999). Where the policy is clear and unambiguous, the policy must be enforced as written. *Id.* "When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." *Id.* at 1029; citing *Brown v. Drillers, Inc.*, 630 So.2d 741 (La. 1994). State Farm policy # 80 4927-D02-18C is

2

the only certified copy of the auto insurance policy that has been presented to the court.

Further, plaintiff relies on Mary Reeves'[s] affidavit to raise the issue that that [sic] she never received a copy of policy # 80 4927-D02-18C. However, the insured's testimony that she never received the insurance policy alone is insufficient to carry the plaintiff's burden of proving that the new policy was not mailed, according to the normal practices of the insurance company. See *Vidrine v. Travelers Ins. Co.*, 488 So.2d 305, (La. App. 3 Cir. 1986). Thus, Mary Reeves'[s] affidavit offers no evidence to satisfy the shifting burden of persuasion placed on the plaintiff.

## ISSUES PRESENTED

In his appeal, the plaintiff raised the following assignments of error: (1) the trial court committed reversible error when it found there were no genuine issues of material fact and granted State Farm's motion for summary judgment; and (2) the trial court committed reversible error when it found State Farm established a prima facie case that its normal practice demonstrated that it mailed Reeves the allegedly amended policy in February 2007.

## DISCUSSION

### Reeves's UMBI Policy History and the Parties' Factual Contentions

On April 2, 2004, State Farm began insuring Reeves under policy number 80 4927-D02-18 for car insurance. This policy had a UMBI limit of $10,000 per person and $20,000 per accident. On May 5, 2006, Reeves changed the UMBI coverage to $1,000,000 per person and per accident.

On December 7, 2006, Reeves added an Isuzu to her insurance policy and removed a Kia that was on the policy. State Farm asserts that this change in vehicles resulted in the insurance policy number changing from 80 4927-D02-18 to 80 4927-D02-18B (policy B). Reeves did not change the UMBI coverage at this time. On December 26, 2006, Reeves removed the recently added Isuzu from her policy and added the previously removed Kia back onto the policy. The UMBI

3

coverage did not change at this time.

On February 22, 2007, Reeves went to Melanie Perry's State Farm Agency to pay the premiums on a separate insurance policy she had with State Farm. This is where the parties' versions of events conflict and where the issue in this case arises. State Farm asserts that while in the office that day, Reeves changed her UMBI insurance policy from $1,000,000 per person and per accident to $25,000 per person and $50,000 per accident. Reeves claims that she did not request to have her UMBI policy changed.[2]

State Farm argues that Reeves requested her UMBI policy be lowered because she was "not working at th[at] time." State Farm asserts that Reeves's UMBI policy was lowered and her policy, which was classified as a business policy, was also changed to a personal classification at that time. This change in classification resulted in the policy number changing to 80 4927-D02-18C (policy C), the policy at issue in this case.

Reeves had already paid the balance for her UMBI policy at that time she allegedly requested that it be lowered. Because of this, she was given a credit on her balance for the next policy period for the amount she overpaid as a result of the decrease in her policy from February 22, 2007 through April 2, 2007, when that policy period ended. State Farm argues that on April 10, 2007, Reeves paid the correct premium for the lower policy, which included the credit for the amount overpaid because of her reduction of the UMBI policy amount on February 22, 2007. State Farm essentially argues that Reeves paying the correct amount for policy C's reduced UMBI coverage after the accident is proof that the policy was validly changed.

---

[2] Neither the plaintiff nor Reeves disputes her presence at Melanie Perry's State Farm Agency on February 22, 2007.

Whether Reeves requested the lowering of her UMBI policy is the issue in the motion for summary judgment. Reeves asserts that policy number 80 4927-D02-18A (policy A) is the applicable policy to the accident in this case, that she did not ask to lower her UMBI policy limits, and that she never received a copy of her "new" UMBI policy once it was allegedly lowered.

## Summary Judgment: Overview

Appellate courts review a judgment granting or denying a motion for summary judgment de novo. *Arceneaux v. Amstar Corp.*, 15-588 (La. 9/7/16), 200 So.3d 277. The appellate court asks the same questions as the trial court in determining whether summary judgment is appropriate: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2), *amended by* 2015 La. Acts No. 422, § 1.[3] "The summary judgment procedure is favored" and "designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La.Code Civ.P. art. 966(A)(2). As for the burden of proof in a motion for summary judgment, La.Code Civ.P. art. 966(C)(2) states:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his

---

[3] In 2015, the Louisiana Legislature significantly revised this state's summary judgment law. 2015 La. Acts No. 422 provides: "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date [Jan. 1, 2016] of this Act." Because the present case was pending adjudication prior to January 1, 2016, the provisions of summary judgment law in existence at the time of the adjudication will be referenced.

evidentiary burden of proof at trial, there is no genuine issue of material fact.

Elaborating on the shifting of the burden of proof, this court has stated:

On a motion for summary judgment, the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. Only if they are sufficient does the burden shift to the opposing party to present evidence that material facts are still at issue, and only at this point may he no longer rest on the allegations and denials contained in his pleadings.

*Chargois v. Trip–L–Quik*, 441 So.2d 45, 47 (La.App. 3 Cir. 1983); see also *Doe v. Hawkins*, 09-1184, p. 14 (La.App. 3 Cir. 6/9/10), 42 So.3d 1000, 1010, *writ denied*, 10-1612 (La. 10/8/10), 46 So.3d 1270.

Lastly, there exists a "well-settled rule that in evaluating a summary judgment issue, the trial court is precluded from making credibility determinations and must evaluate inferences from undisputed facts in a light most favorable to the party opposing the motion." *Meyer & Assocs., Inc. v. Coushatta Tribe of La.*, 14-1109, 14-1114, p. 28 (La.App. 3 Cir. 1/27/16), 185 So.3d 222, 241, *writ denied*, 16-369 (La. 4/22/16), 191 So.3d 1048.

### Summary Judgment Law Applied

The plaintiff asserts that the trial court erred when it found Reeves's affidavit "testimony that she never received the insurance policy alone is insufficient to carry the plaintiff's burden of proving that the new policy was not mailed, according to the normal practices of the insurance company." We agree with plaintiff's assertion, finding State Farm failed to carry its initial burden of proof on the issues of mailing and its normal company practice.

Louisiana Revised Statutes 22:867[4] (emphasis added) states:

---

[4] Louisiana Revised Statutes 22:867 was renumbered from La.R.S. 22:628 by 2008 La. Acts No. 415, § 1, which was effective January 1, 2009.

A.  No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance.  This Section shall not apply to contracts as provided in Subpart C of Part IV of this Chapter.

B.  The provisions of this Section shall apply where a policy or other written evidence of insurance is coupled by specific reference with another policy or written evidence of insurance in existence as of the effective date or issued thereafter.

C.  Any written agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be deemed to be physically made a part of a policy or other written evidence of insurance, within the meaning of this Section, whenever such written agreement makes reference to such policy or evidence of insurance and is sent to the holder of such policy or evidence of insurance by United States mail, postage prepaid, at such holder's last known address as shown on such policy or evidence of insurance, by electronic transaction in accordance with the Louisiana Uniform Electronic Transactions Act, R.S. 9:2601 et seq., or is personally delivered to such holder.

Whether an insurance policy change was mailed is an issue of fact.  See *Brown v. Permanent Gen. Ins. Co.*, 00-1514 (La.App. 5 Cir. 3/14/01), 783 So.2d 467, *writ denied*, 01-1034 (La. 6/1/01), 793 So.2d 196; *Ware v. Mumford*, 05-204 (La.App. 5 Cir. 7/26/05), 910 So.2d 467, *writ denied*, 05-2435 (La. 3/24/06), 925 So.2d 1227.  Thus, in a motion for summary judgment, the insurance company bears the burden of proving that policy changes were mailed to the insured.

After carefully reviewing State Farm's evidence presented in this case, we find it never established it mailed the policy changes to Reeves.  The trial court erred when it held that policy C was "issued to Mary Reeves and mailed to her home, based on the certificate filed by State Farm."  No such certificate exists in the record of this case and none of the affidavits State Farm relied upon support

7

that the policy was mailed.[5]  Compare *Rapp v. GEICO Indem. Co.*, 05-368 (La.App. 4 Cir. 2/8/06), 925 So.2d 626, *writ denied sub nom. Rapp v. Geico Indem. Co.*, 06-594 (La. 5/5/06), 927 So.2d 326 (holding that the insurer provided internal underwriting documents and an affidavit from an underwriter, stating the insurer mailed the original policy and the later policy renewal).  The trial court further erred when it found State Farm entered evidence to establish what its "normal practices" are regarding the mailing of policy changes.[6]  State Farm entered no such evidence.

In summation, the trial court erred when it shifted the burden to the plaintiff to prove that Reeves was never mailed a copy of policy C, because State Farm never carried its initial burden of proof as required by La.Code Civ.P. art. 966(C)(2).  Therefore, there remains a genuine issue of material fact regarding whether State Farm mailed policy C to Reeves, making summary judgment inappropriate.

## DISPOSITION

For the foregoing reasons, we reverse the judgment of the trial court which granted State Farm Mutual Automobile Insurance Company's motion for summary judgment and remand this matter for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[5] State Farm introduced the certification of Kristin Mullins, and the affidavits of Monica Bass and Melanie Perry.  None of this evidence attests that State Farm mailed or delivered policy C to Reeves.

[6] Louisiana Code of Evidence Article 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.  The evidence may consist of testimony in the form of an opinion or evidence of specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine.

8