*890 WEIMER, Justice.
_JjAn insurance company seeks review of a decision on the issue of coverage under a claims-made-and-reported policy. The appellate court found that, under the Direct Action Statute, an insurer cannot use the policy’s claim-reporting requirement to deprive an injured third party of a right that vests at the time of injury. After considering the applicable law, we find that the reporting provision in a claims-made-and-reported policy is a permissible limitation on the insurer’s liability as to third parties and does not violate the Direct Action Statute. Accordingly, we reverse that portion of the court of appeal’s decision relating to the claim of the injured third party, and we reinstate the trial court’s judgment, finding no coverage. The matter is remanded to the trial court for further proceedings.
FACTS AND PROCEDURAL HISTORY
On September 28, 2009, Brian Armstrong (Armstrong) was incarcerated at the city jail in Opelousas when he was allegedly beaten by two other inmates. He later died. On September 27, 2010, Armstrong’s mother, Joyce Gorman (Gor-man), filed a survival action and a wrongful death action against the city of Opelousas and its]¡.police department (collectively the City).[1] After being served with the petition, the City filed an answer.
In December 2010, Gorman directed discovery to the City seeking the identity of its insurer and requesting a copy of any applicable insurance policy. When the City failed to respond, Gorman filed a motion to compel, which was granted in June 2011. Subsequently, the City identified Lexington Insurance Company (Lexington) as its insurer. Gorman then filed an amended petition on September 7, 2011, naming Lexington as an additional defendant. The amended petition was served on September 22, 2011. Lexington answered Gorman’s petition, asserting numerous affirmative defenses. Afterwards, Lexington filed a motion for summary judgment, seeking to have Gorman’s direct action claim against it dismissed based on lack of coverage because her claim had not been reported to Lexington within the policy’s stated time limit. Gorman and the City then filed cross motions for summary judgment on the issue of coverage.
The Lexington policy provided:
NOTICE: THIS IS A CLAIMS MADE POLICY. COVERAGE IS LIMITED GENERALLY TO LIABILITY FOR CLAIMS FIRST MADE AGAINST YOU AND REPORTED IN WRITING TO U.S. WHILE THE COVERAGE IS IN FORCE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS POLICY COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. In relevant part, the policy further stated:
^SECTION I. INSURING AGREEMENT
A. We shall pay those amounts that the Insured becomes legally obligated to pay to compensate others for bodily injury, property damage, or personal injury arising out of the Insured’s wrongful act. The wrongful *891 act shall take place on or after the retroactive date, but before the end of the policy period, and shall arise solely in your capacity as a law enforcement agency. A claim for a wrongful act shall be first made against the Insured and reported to us in writing during the policy period or any extended reporting period we provide under this policy.[2] [Emphasis in original.]
The pertinent policy period is as follows:
POLICY PERIOD: 12:01 A.M., standard time at the address of the Named Insured as stated herein.
From: 01/17/2010 To: 04/17/2011 Name of Law Enforcement Department and Address of the Insured Location: CITY OF OPELOUSAS 318 NORTH COURT STREET OPELOUSAS, LA 70570
Wrongful acts dating back to April 17, 2005, the policy’s retroactive date, are covered by the policy. The City had also purchased a similar policy from Lexington for the period of April 17, 2011, to April 17, 2012.
Relying on Hood v. Cotter, 08-0215, 08-0237 (La.12/2/08), 5 So.3d 819, the trial court observed that “the policy language limiting coverage to those claims made and reported during the policy period did not serve to limit [Gorman’s] right of action.” In accordance with Hood, the trial court explained that the policy language “provides the scope of coverage bargained for by the [City]” and recognized that any contrary interpretation “would effectively convert [the City’s] claims made policy into an occurrence policy,” which is contrary to “the bargained for exchange” between Lexington and the City. Accordingly, the trial court granted Lexington’s |4motion for summary judgment as to the City and Gorman, denied the cross motions filed by the City and Gorman, and dismissed “all claims adverse to Lexington.”
On appeal by the City and Gorman, the appellate court initially found that the City’s purchase of a separate claims-made policy for the period of April 17, 2011, to April 17, 2012, the period in which Lexington was added as a defendant, had no bearing on the issue of coverage. Therefore, the City’s and Gorman’s “merged into one” argument for continued coverage under the subsequent policy was rejected. Gorman v. City of Opelousas, 12-1468, p. 3 (La.App. 3 Cir. 5/1/13), 111 So.3d 1195 (unpublished). Applying Murray v. City of Bunkie, 96-297, p. 5 (La.App. 3 Cir. 11/6/96), 686 So.2d 45, 48, the appellate court held that the reporting provision in the City’s policy could be applied to defeat the City’s alternative claim under the April 17, 2010-April 17, 2011 policy and affirmed the grant of summary judgment in Lexington’s favor insofar as it pertained to the City.
After observing this court’s refusal to address the issue of coverage in the context of an injured third party’s claim in Livingston Parish Sch. Bd. v. Fireman’s Fund Am. Ins. Co., 282 So.2d 478 (La.1973), the appellate court resorted to its prior decisions in Murray and Pittman v. Nutmeg Ins. Co., 97-524, p. 5 (La.App. 3 Cir. 3/6/98), 708 So.2d 832, 834, for guidance in resolving the issue of coverage as to Gorman. Relying on Murray, the appellate court recognized that the Direct Action Statute gave Gorman a vested right at the time the tort was committed that “could not be taken away because of the insured’s failure to notify the insurer — a condition over which the plaintiff had no control.” Gorman, 12-1468 at 5,129 So.3d 522, quoting Murray, 96-297 at 8, 686 *892 So.2d at 50. The court would not allow the policy’s reporting provision to serve “as a coverage defense against third parties who had no knowledge of the ^provision and who had taken steps to pursue their legal remedies”[3] so as to deprive the injured third party of “her vested rights under the direct action statute.” Accordingly, the trial court’s grant of summary judgment against Gorman was reversed, and the matter was remanded for further proceedings.
Lexington’s subsequent writ application to this court was granted[4] to address whether the Direct Action Statute affords an injured third party a vested right that cannot be taken away because of an insured’s failure to report a claim to the insurer under a claims-made-and-reported policy as found in Murray. Relying on the reporting provision in its policy, Lexington contends that the appellate court improperly disregarded this court’s decision in Hood and imposed insurance coverage on Lexington where none existed.
DISCUSSION
An insurance policy is a contract between the insured and insurer and has the effect of law between them. See La. C.C. arts.1906 & 1983; Peterson v. Schimek, 98-1712, p. 4 (La.3/2/99), 729 So.2d 1024, 1028. “The role of the judiciary in interpreting an insurance contract is to ascertain the common intent of the insured and insurer as reflected by the words in the policy.” Peterson, 98-1712 at 4, 729 So.2d at 1028, citing La. C.C. art.2045. “When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties’ intent.” Peterson, 98-1712 at 4-5, 729 So.2d at 1028, citing La. C.C. art.2046. Where a policy unambiguously and clearly limits coverage to claims made and reported during the policy period, such limitation of liability is not per se impermissible. See Hood, |fi08-0215, 08-0237 at 18, 5 So.3d at 830; Anderson v. Ichinose, 98-2157, p. 7 (La.9/8/99), 760 So.2d 302, 306, citing Livingston Parish Sch. Bd., 282 So.2d at 481.
According to the pertinent terms of the City’s policy, Lexington agreed to pay claims on behalf of the City if three conditions occur:
1) the wrongful act occurs on or after the retroactive date of the policy, but before the end of the policy period;
2) the claim for the wrongful act is first made against the City during the policy period; and
3) the claim is reported to Lexington in writing during the policy period.
Satisfaction of all three conditions is required for coverage under the Lexington policy.[5] The City was undisputedly informed that Lexington’s liability is limited by these terms.
Therefore, coverage under the Lexington policy was effective only if Gor-man’s claim was both made and reported *893 within the applicable policy period. See Livingston Parish School Board, 282 So.2d at 481, citing 7 Appleman, Insurance Law and Practice (Supp.1972), § 4262. Under this type of policy, the risk of a claim incurred but not made, as well as a claim made but not reported, is shifted to the insured. See Anderson, 98-2157 at 7, 760 So.2d at 306 n. 6, citing Bob Works, Excusing Nonoccurrence of Insurance Policy Conditions in Order to Avoid Disproportionate Forfeiture: Claims-Made Formats as a Test Case, 5 Conn. L.J. 505, 546 (1999). “The purpose of the reporting requirement [in a claims-made policy] is to define the scope of coverage [purchased by the insured] by providing a |7certain date after which an insurer knows it is no longer liable under the policy.” Resolution Trust Corp. v. Ayo, 31 F.3d 285, 289 (5th Cir.1994) (applying Louisiana law). Once the policy period and reporting period expire, the insurer can “close its books” on that policy. See Id.
Although the September 28,2009 wrongful act occurred after April 17, 2005 and before April 17, 2011, and Gorman’s September 27, 2010 claim was made between April 17, 2010 and April 17, 2011, as required, Gorman’s claim was not reported to Lexington until September 22, 2011, which is after the policy period expired on April 17, 2011. The occurrence of only the first two of the policy’s required conditions was insufficient to trigger coverage. Absent a timely reporting, one of the conditions needed to trigger coverage under the applicable Lexington policy did not occur.
Therefore, the Lexington policy did not provide coverage to the City for the wrongful act alleged by Gorman.[6]
Because an insurer’s ability to limit its liability and impose reasonable conditions on the obligations it assumes by its contract is restricted by statute and/or public policy,[7] Gorman urges that the application of the claims-made-and-reported provisions in the Lexington policy to her claim is against public policy and violates statutory law. Gorman’s right to sue Lexington arises out of the Direct Action Statute, which provides that an injured person, at his or her option, “shall have a right of direct action against the insurer within the terms and limits of the policy.” La. R.S. 22:1269(B)(1).[8] Louisiana R.S. 22:1269(D) further provides:
| Jt is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability the insured may have as or for a tortfeasor within the terms and limits of the policy. [Emphasis added.]
“The Direct Action Statute affords a victim the right to sue the insurer directly when a liability policy covers a certain risk.”
*894 Anderson, 98-2157 at 9, 760 So.2d at 307. The Direct Action Statute “does not, however, extend the protection of the liability policy to risks that were not covered or were excluded by the policy (at least in the absence of some mandatory coverage provisions in other statutes).” Id.
Limitations on an insurer’s ability to contract are imposed by La. R.S. 22:868, which, in pertinent part, provides:[9]
B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state ... shall contain any condition, stipulation, or agreement limiting [the] right of action against the insurer ... to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract. [Emphasis added.]
The emphasized language in La. R.S. 22:868(B) prohibits Louisiana-issued policies from containing any provision that would limit a “right of action against [an] insurer ... to a period of less than one year.”
IpBased on the protection statutorily afforded to the public, Gorman urges that La. R.S. 22:1269(B)(1) and 868(B) confer substantive rights to injured third parties, which vest when the injury occurs. In West v. Monroe Bakery, 217 La. 189, 46 So.2d 122 (1950) (plurality opinion), which involved an occurrence policy,[10] this court recognized that the Direct Action Statute “expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public.” Id., 46 So.2d at 129-30, quoting Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351, 357 (1942) (emphasis omitted). In so holding, this court observed:
It is quite evident that, except in very rare cases, the party injured by the negligence of another has no knowledge as to whether or not that other is insured, and if he has ordinarily no knowledge as to whether there is any insurance at all, then, clearly, he has no knowledge as to who the insurer may be if there is one. It is therefore not within his power to give the notice as required by the policy, and, if notice is essential to his recovery, his right must, as we have stated, depend upon the other party. We do not think such was the intention of the legislators.
West, 46 So.2d at 126, quoting Edwards v. Fidelity & Casualty Co., 11 La.App. 176, 123 So. 162, 163 (La.App.Orleans 1929). Thus, where a third person is not at fault in the insurer’s failure to receive timely notice as required by an occurrence policy, the third party cannot be made liable for the insured’s breaching of an agreement with an insurer. See West, 46 So.2d at 130.
The appellate courts are divided on the issue of whether this principle applies in the context of a claims-made-and-reported policy. In Williams v. Lemaire, 94-1465, *895 p. 5 (La.App. 4 Cir.5/16/95), 655 So.2d 765, 768, and Murray, 96-297 at 8, 686 So.2d at 50, the courts refused to distinguish between claims-made policies and occurrence policies in the application of this principle, finding that the | ^enforcement of the reporting provision in claims-made policies also deprives injured third parties of their right of action under the Direct Action Statute. However, in Reichert v. Bertucci, 94-1445 (La.App. 4 Cir. 1/31/95), 650 So.2d 821, 823, Case v. Louisiana Medical Mut. Ins. Co., 624 So.2d 1285, 1289 (La.App. 3 Cir.1993), and Bank of Louisiana v. Mmahat, 608 So.2d 218, 221 (La.App. 5 Cir.1992), the courts declined to apply the principle of West in the context of claims-made policies, relying on this court’s pronouncement in Livingston Parish Sch. Bd. that the limitation of liability in a claims-made policy is not per se invalid as against public policy. See Livingston Parish Sch. Bd., 282 So.2d at 481.
In Livingston Parish Sch. Bd., 282 So.2d at 482-83, this court rejected the public policy attack made on a claims-made-and-reported policy in connection with an insured’s claim;[11] however, this court did not resolve this issue in the context of an injured third party’s claim.[12] Later, in Anderson, when presented with the opportunity to address the issue, this court declined to do so because the injured third party’s claim had been neither timely made nor reported to the insurer during the policy period as required by the policy. See Anderson, 98-2157 at 8 n. 7, 760 So.2d at 306 n. 7.
In Finally, this court considered the enforceability of a reporting provision in a claims-made policy against an injured third party in Hood where the patient’s claim for medical malpractice had been neither first made against the doctor nor reported to the doctor’s insurer during the policy period as required by the policy. Consideration of the public policy concerns was necessary in Hood because the claim had been both made and reported less than one year from the date of the acts giving rise to the patient’s medical malpractice action.[13] In resolving the issue of coverage under those circumstances, this court, in Hood, considered whether the public policy expressed by the Direct Action Statute would allow an insurer to deny a patient coverage where the doctor failed to properly report the claim to his insurer. In reversing the appellate court’s decision in favor of the injured third party,[14] this *896 court recognized that the Direct Action Statute “grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured.” Hood, 08-0215, 08-0237 at 17-18, 5 So.3d at 829 (emphasis added).
After examining the policy, the Hood court held that the provisions relating to the making and reporting of claims did “not limit plaintiffs right to bring his suit” against the insurer. Hood, 08-0215, 08-0237 at 18, 5 So.3d at 829. Rather, these | ^provisions provided “the scope of coverage bargained for by [the insured].” Id. The policy’s denial of coverage to the insured for the injured third party’s claim did not limit the injured third party’s right of action, as La. R.S. 22:1269 “does not extend the protection of the liability policy to risks that were not covered by the policy unless another statute requires a mandatory coverage provision.” Hood, 08-0215, 08-0237 at 18, 5 So.3d at 829-30. The court reasoned: “To hold otherwise would effectively convert a claims-made policy into an occurrence policy and change the bargained-for exchange between the insurer and the insured.” Id., 08-0215, 08-0237 at 18, 5 So.3d at 830. Because claims-made policies are not per se impermissible or against public policy,[15] this court declined to interpret La. R.S. 22:868 as prohibiting a provision that makes coverage dependent on a claim being first made and reported during a policy period.[16] Id. As in Anderson, the event that triggered policy coverage in Hood simply had not occurred during the applicable policy period. Id. Therefore, the enforcement of the policy provisions on the making and reporting of claims does not deprive an injured third party of a right of action under the Direct Action Statute.
Because this court, in Hood, considered the issue of whether the Direct Action Statute preserves an injured third party’s claim against an insurer where the insured failed in his reporting obligation, Lexington is correct in its assertion that the appellate court in this case erred in disregarding the Hood decision. Relying on the Intact that her claim, unlike that in Hood, was made during the applicable policy period as required by the Lexington policy, Gorman urges that Hood does not govern in this case. Although factually distinguishable, we find that the court’s reasoning in Hood nevertheless applies in this case.[17]
Based on the holding in Hood, in the absence of coverage to the City, as discussed previously, Gorman was not deprived of her rights under the Direct *897 Action Statute, as that statute does not extend any greater right to the injured third party who was damaged by the insured. See First Am. Title Ins. Co. v. Titan Title, LLC, 2011 WL 5854688 *2-3 (M.D.La.2011) (citing Hood as “determinative”); Vitto v. Davis, 09-0498, p. 6 (La.App. 3 Cir. 11/4/09), 23 So.3d 1048, 1052 (relying on Hood). Any right that Gorman might have had under the Lexington policy did not vest at the time of her son’s injury. To hold otherwise would effectively convert the City’s claims-made-and-reported policy into an occurrence policy, resulting in the judicial modification of the bargained-for exchange between the insurer and insured.[18] We recognize that an injured third party rarely has knowledge of the identity of the insurer of the party responsible for an injury, making it nearly impossible for an injured third party to give notice to the insurer. Rather, the injured third party generally has to rely on the insured, which has an interest in ensuring the availability of the coverage it purchased, to comply with the reporting provision in its policy. Although we can contemplate no logical reason why the City would not report a claim for which it apparently purchased insurance coverage, we decline, under the facts of I uthis case, to hold the insurer liable for the City’s failure to report the claim as required by the Lexington policy. A contrary finding would, where there is no evidence of fraud or collusion, punish the insurer for the inactions of its insured.
At least in terms of an available funding source if Gorman prevails in her lawsuit, there is little doubt that Gorman has been prejudiced by the City’s delay in answering discovery and revealing the identity of its insurer.[19] However, this court has previously considered and rejected arguments based on equity in this context. Although insurance policies “are executed for the benefit of all injured persons,” such protection is limited by the “terms and limits of the policy.” La. R.S. 22:1269(B)(1) & (D); Hood, 08-215, 08-237 at 18, 5 So.3d at 829. Louisiana R.S. 22:868 simply does not mandate coverage where none exists. See Hood, 08-0215, 08-0237 at 18-19, 5 So.3d at 830.
The existence of a subsequently-issued Lexington policy does not dictate a contrary result on the issue of coverage. Despite the similarities between the April 17, 2010-April 17, 2011 policy and the April 17, 2011-April 17, 1202 policy, there is one very important difference — the defined policy period. The policy in effect for the period of April 17, 2011, to April 17, 2012 (during which period the claim was reported to Lexington) did not extend the policy period for the policy that was in *898 effect from April 17, 2010, to April 17, 2011. A judicial expansion of policy coverage would circumvent the insurance contract that was mutually entered into by the parties and create insurance protection where none existed. See Resolution Trustj 1fi Corp., 31 F.3d at 292. Coverage under each policy here requires “[a] claim for a wrongful act shall be first made against the Insured and reported to us in writing during the policy period.” The plain terms of the policies must be enforced. See La. C.C. art.2046; Peterson, 98-1712 at 4-5, 729 So.2d at 1028. Clearly, the policy required that the claim be first made and reported in the same policy period for there to be coverage.
CONCLUSION
The provisions of the Lexington policy are undisputedly clear and unambiguous. Provisions on the making and reporting of claims in a claims-made-and-reported policy are not per se impermissible as against public policy. Under the City’s policy, the event and peril insured against is based on making and reporting of the claim within the period specified by the policy. The City’s failure to report Gorman’s claim to Lexington during the applicable policy period as required precludes coverage. Absent coverage, Gorman was not deprived of a right under the Direct Action Statute. Therefore, the trial court correctly granted summary judgment in favor of Lexington as to the City and Gorman, and the appellate court erred in reversing summary judgment relative to Gorman.
DECREE
That portion of the decision of the appellate court that reversed the trial court’s grant of summary judgment in favor of Lexington as to Gorman is reversed, and the trial court’s judgment in this regard is reinstated. The matter is remanded to the trial court for further proceedings.
REVERSED IN PART; JUDGMENT REINSTATED IN PART; REMANDED TO THE TRIAL COURT.

. The two inmates who allegedly harmed Armstrong were also named as defendants.

2. The "extended reporting period” provision is not pertinent to the facts of this case.

. See Gorman, 12-1468 at 5, 111 So.3d 1195, quoting Pittman, 97-524 at 5, 708 So.2d at 834.

. See Gorman v. City of Opelousas, 13-1734 (La.11/8/13), 129 So.3d 522.

. See Hood, 08-0215, 08-0237 at 18, 5 So.3d at 830 (addressing the "event that triggered policy coverage," that is, "a claim being first made and reported during the policy period”); see also Anderson, 98-2157 at 6, 760 So.2d at 305, quoting Sol Kroll, The Professional Liability Policy “Claims Made," 13 Forum 842, 843 (1978) (addressing "the event and peril being insured”); 15 W. Shelby McKenzie & H. Alston Johnson, Insurance Law and Practice, Louisiana Civil Law Treatise, § 6.25 at 598-99 (4th ed.2012).

. As indicated, the lower courts agreed that the reporting provision in the Lexington policy was enforceable as between the two contracting parties (the City and Lexington). See Gorman, 12-1468 at 5, 111 So.3d 1195. The City did not take a writ.

. See Livingston Parish Sch. Bd., 282 So.2d at 481.

.Prior to the 2008 renumbering of the statutes in the Louisiana Insurance Code, the substance of La. R.S. 22:1269 was found in La. R.S. 22:655. See 2008 La. Acts 415, § 1, effective January 1, 2009. For consistency in references and to prevent confusion, this provision is referred to as La. R.S. 22:1269 in this opinion although prior decisions may have been based on La. R.S. 22:655.

. Prior to the 2008 renumbering, the substance of La. R.S. 22:868 was found in La. R.S. 22:629. See 2008 La. Acts 415, § 1, effective January 1, 2009. For consistency in references, this provision is referred to as La. R.S. 22:868 in this opinion.

. An occurrence policy differs from the claims-made-and-reported policy at issue in this matter.

. This court in Livingston Parish Sch. Bd. reasoned:
No reasonable expectation of coverage by the insured was defeated by the unambiguous provisions clearly limiting coverage to those claims made during the policy period.
[[Image here]]
In effect, the insured received what he paid for by the present policy, with premiums presumably reduced to reflect the limited coverage.
Id., 282 So.2d at 482-83.

. The Livingston Parish Sch. Bd. court acknowledged that, in some non-renewal situations, enforcement of such a provision may be against public policy. See Id., 282 So.2d at 481 n. 4.

. In Hood, the medical treatment was provided from April through August of 2003, and the patient was discharged in September of 2003. Suit was filed by the patient against the doctor on April 29, 2004, with the malpractice insurer being added as a defendant on February 15, 2005, in connection with a policy of insurance that was in effect from January 1, 2003 to January I, 2004. The doctor did not renew the policy and refused the insurer’s offer of " 'tail coverage’ that would have insured him against claims that arose from medical incidents occurring during the policy period, but were first made and reported after that period.” Hood, 08-0215 at 2-3, 5 So.3d at 820-21.

. The appellate court in Hood affirmed the trial court’s denial of the insurer’s motion for *896 summary judgment on the issue of coverage, finding:
[b]ecause the policy provision at issue in this case effectively reduced the prescriptive period for making a claim against [the insurer] to less than the statutorily-mandated period, the policy provision is in violation of the statutory law that prohibits the limiting of a right of action against an insurer to less than one year.
Hood v. Cotter, 06-1390, p. 8 (La.App. 1 Cir. 12/28/07), 978 So.2d 988, 994.

.See Anderson, 98-2157 at 7, 760 So.2d at 306, citing Livingston Parish Sch. Bd., 282 So.2d at 481.

. The Hood court explained that La. R.S. 22:868:
[D]oes not mandate coverage, but prohibits any condition, stipulation or agreement in an insurance contract from limiting a right of action against the insurer to a period of less than one year from the time when the cause of action accrues, was not violated as the claims-made coverage provision did not impermissibly limit plaintiff’s cause of action.
Hood, 08-0215, 08-0237 at 18-19, 5 So.3d at 830.

. In light of this court’s holding in Hood, the appellate court's reliance on Murray and Pittman was improper.

. A variety of coverages is typically available to an insured. Presumably, premiums are calculated in accordance with the amount of protection undertaken by the insurer. See Livingston, 282 So.2d at 482-83. In effect, the City received what it paid for by the present policy, with premiums potentially adjusted to reflect the limited coverage.

. Even though payment of a resulting judgment, if any, by the City is discretionary in that an appropriation would be required and the City’s assets cannot be seized to satisfy a judgment, we are not free to modify the terms of the policy that were bargained for by the City and Lexington. See La. Const, art. XII, § 10(C) (governing the effects of judgments, the seizure of public property and public funds, and the payment of judgments); La. R.S. 13:5109(B)(2) (governing the payment of a judgment rendered against a political subdivision); Peterson, 98-1712 at 5, 729 So.2d at 1029 ("Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy’s provisions are couched in unambiguous terms.”).