PARRO, J.
| ¡.Frank Thomas Vallot and Barbara Kay Butler Vallot appeal a September 16, 2013 judgment granting a motion for summary judgment and dismissing their claims against Continental Casualty Company (Continental). They also appeal a December 2, 2013 judgment denying their request for a new trial. For the following reasons, we affirm the judgments.
FACTUAL AND PROCEDURAL BACKGROUND
In September 2007, Leon Marion La-londe, Jr. and Martha Smith Lalonde bought a piece of immovable property in Ponchatoula, Louisiana, from the Vallots. The Lalondes constructed a residence on the property and occupied it in July 2009. WTiile trenches were being dug on the perimeter of the house for water and electrical lines, the Lalondes discovered that the property may previously have been used as a landfill. By October 2009, some unusual structural issues prompted them to hire a licensed environmental engineer to evaluate the property and determine the nature and extent of the problem. His *459 investigation revealed that the residence was built on a debris landfill, which was unstable and would eventually cause the structural failure of the house, rendering it uninhabitable.
On May 14, 2010, the Lalondes sued the Vallots in redhibition, alleging that the Vallots knew when they sold the property that it had been a debris landfill, but intentionally withheld this information. They further alleged that the presence of the landfill was a redhibitory defect, which rendered the property completely unsuitable for its intended use. The La-londes sought rescission of the sale, plus the costs of the improvements, out-of-pocket expenses, and general damages for mental anguish, inconvenience, and stress. On July 14, 2010, the Vallots filed an answer and a third-party demand, naming Charlene Branch Daniels and Branch Real Estate, LLC (Branch) as third-party defendants, alleging they had breached a fiduciary duty and had been negligent in representing the Vallots as the real estate listing agents on the property.[1] The third-party demand was served on Ms. Daniels on August 5, 2010.
|sOn June 1, 2011, the Vallots amended their third-party demand to add Continental as a third-party defendant as the errors and omissions insurer of Ms. Daniels and Branch. Continental received notice of this demand on June 13, 2011. The Continental policy insuring Ms. Daniels and Branch was a “claims-made-and-reported” policy with a policy period from January 1, 2010, to January 1, 2011. Although Ms. Daniels and Branch received notice of the Vallots’ claims against them on August 5, 2010, within the policy period, Continental was not notified until after the policy period, when Continental was served with notice of the Vallots’ third-party demand on June 13, 2011. On July 8, 2013, Continental filed a motion for summary judgment and for a declaratory judgment, claiming that because the Vallots’ claim was not reported to Continental during the policy period, as required by the policy, there was no coverage.
Continental’s motion for summary judgment was heard on August 26, 2013, and on September 16, 2013, the court signed a judgment granting the motion and dismissing all claims against Continental. The Vallots’ motion for a new trial was denied on December 2, 2013. They have appealed both judgments.
APPLICABLE LAW
An appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. West v. Clarendon Nat’l Ins. Co., 99-1687 (La.App. 1st Cir.7/31/00), 767 So.2d 877, 879. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); George S. May Int’l Co. v. Arrowpoint Capital Corp., 11-1865 (La.App. 1st Cir.8/10/12), 97 So.3d 1167, 1170. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact and that the mover is *460 entitled to judgment as a matter 1 ¿of law. LSA-C.C.P. art. 966(B)(2); In re Succession of Beard, 13-1717 (La.App. 1st Cir.6/6/14), 147 So.3d 753, 759.
Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. Doiron v. Louisiana Farm Bureau Mut. Ins. Co., 98-2818 (La.App. 1st Cir.2/18/00), 753 So.2d 357, 362 n. 2. In seeking a declaration of coverage under an insurance policy, Louisiana law places the burden on the plaintiff to establish every fact essential to recovery and to establish that the claim falls within the policy coverage. Ho v. State Farm Mut. Auto Ins. Co., 03-0480 (La.App. 3rd Cir.12/31/03), 862 So.2d 1278, 1281, citing Pierce v. Aetna Life and Cas. Ins. Co., 572 So.2d 221, 222 (La.App. 1st Cir.1990). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Jones v. Estate of Santiago, 03-1424 (La.4/14/04), 870 So.2d 1002, 1010.
An insurance policy is a contract between the insured and insurer and has the effect of law between them. See LSA-C.C. arts.1906 and 1983; Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024, 1028. The role of the judiciary in interpreting an insurance contract is to ascertain the common intent of the insured and insurer as reflected by the words in the policy. Peterson, 729 So.2d at 1028, citing LSA-C.C. art. 2045. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties’ intent. Id., citing LSA-C.C. art. 2046. Where a policy unambiguously and clearly limits coverage to claims made and reported during the policy period, such limitation of liability is not per se impermissible. See Anderson v. Ichinose, 98-2157 (La.9/8/99), 760 So.2d 302, 306; Livingston Parish Sch. Bd. v. Fireman’s Fund Am. Ins. Co., 282 So.2d 478, 481 (La.1973).
ANALYSIS
Continental submitted the following evidence in support of its motion for | ssummary judgment: (1) affidavit of Cindy Rice Grisson, CEO of Rice Insurance Services Company, LLC (RISC); (2) certified copy of the real estate licensees’ errors and omissions policy issued by Continental to Ms. Daniels and Branch; (3) certified copies of certificates of real estate licensees’ errors and omissions insurance coverage issued by RISC for Ms. Daniels and Branch; (4) copy of the La Sondes’ petition against the Vallots filed May 14, 2010; (5) copy of the Vallots’ answer, peremptory exceptions, and third-party demand against Ms. Daniels and Branch; (6) affidavit of Bobby Powell, Deputy Sheriff for the Parish of Tangipahoa; and (7) copy of the Vallots’ amended third-party demand, adding Continental as an additional third-party defendant. This evidence showed that Continental had issued “Real Estate Licensees Errors and Omissions Policy,” No. 10 EO 0000LA, for a “claims-made-and-reported” Individual Policy Period of January 1, 2010, to January 1, 2011. Ms. Daniels and Branch were issued certificates of coverage identifying them as insureds under this policy. The Vallots filed a third-party demand against Ms. Daniels on July 14, 2010. Ms. Daniels and Branch received notice of this claim on August 5, 2010, within the policy period. However, the Vallots’ claim was not reported to Continental until it received notice from RISC *461 on June 13, 2011, over six months after the policy period expired.
The Declarations Page of the Continental policy states:
NOTICE: THIS IS A CLAIMS-MADE POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN THIS COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS WHICH ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY WHILE THE POLICY IS IN FORCE.
The policy also contains the following prefatory notice:
THIS INSURANCE IS WRITTEN ON A CLAIMS-MADE AND REPORTED BASIS. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, COVERAGE UNDER THIS MASTER POLICY IS LIMITED TO LIABILITY ONLY FOR THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE INDIVIDUAL POLICY PERIOD OR ANY APPLI-. CABLE EXTENDED REPORTING PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED BEFORE THE BEGINNING OR AFTER THE END OF THE INDIVIDUAL POLICY PERIOD. PLEASE REVIEW THIS. MASTER POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.
The policy further provided that Continen-, tal would pay damages under the policy “so | Jong as the Claim is first made against the Insured during the Individual Policy Period and reported to the Company in writing during the Individual Policy Period....” “Individual Policy Period” is defined as follows:
Individual Policy Period means the period set forth in the Certificate of Coverage commencing with the date the Licensee obtained coverage under the current group policy by paying the appropriate premium and ending with the cancellation or expiration of the Licensee’s coverage under the current group policy. The Individual Policy Period must be within the dates of the Group Policy Period shown on the Declarations.
The Group Policy Period shown on the Declarations page is “From January 1, 2010 to January 1, 2011.” The policy allows extended reporting periods, but only in case of cancellation or nonrenewal. Ms. Daniels and Branch renewed the Continental policy through at least January 2012. However, the policy does not offer extended reporting periods if the policy is renewed.
The Vallots contend that there was continuing coverage under the Continental policy, because it had been renewed by Ms. Daniels and Branch for the period January 1, 2011, to January 1, 2012. They rely on wording in Hood v. Cotter, 08-0215 (La. 12/2/08), 5 So.3d 819, 831, which dismissed the insured doctor’s claims against his insurer, concluding that because the insured did not purchase continuing coverage, or “tail coverage” after his elaims-made policy expired, he ceased to be a qualified health care provider under the Medical Malpractice Act. This wording implies that if continuing coverage had been purchased by the insured, the insurance company would have remained liable.
However, in a recent case, the Louisiana Supreme Court addressed the issue of whether renewal of a “claims-made-and-reporting” policy provided an automatic extension of the reporting period. In Gorman v. City of Opelousas, 13-1734 (La.7/1/14), 148 So.3d 888, the court stated:
*462 According to the pertinent terms of the City’s policy, Lexington agreed to pay claims on behalf of the City if three conditions occur:
1) the wrongful act occurs on or after the retroactive date of the policy, but before the end of the policy period;
2) the claim for the wrongful act is first made against the City during the policy period; and
|73) the claim is reported to Lexington in writing during the policy period.
Satisfaction of all three conditions is required for coverage under the Lexington policy. The City was undisputedly informed that Lexington’s liability is limited by these terms.
Therefore, coverage under the Lexington policy was effective only if Gor-man’s claim was both made and reported within the applicable policy period. Under this type of policy, the risk of a claim incurred but not made, as well as a claim made but not reported, is shifted to the insured. “The purpose of the reporting requirement [in a claims-made policy] is to define the scope of coverage [purchased by the insured] by providing a certain date after which an insurer knows it is no longer liable under the policy.” Resolution Trust Corp. v. Ayo, 31 F.3d 285, 289 (5th Cir.1994) (applying Louisiana law). Once the policy period and reporting period expire, the insurer can “close its books” on that policy. See Id.
Although the September 28, 2009 wrongful act occurred after April 17, 2005 and before April 17, 2011, and Gor-man’s September 27, 2010 claim was made between April 17, 2010 and April 17, 2011, as required, Gorman’s claim was not reported to Lexington until September 22, 2011, which is after the policy period expired on April 17, 2011. The occurrence of only the first two of the policy’s required conditions was insufficient to trigger coverage. Absent a timely reporting, one of the conditions needed to trigger coverage under the applicable Lexington policy did not occur. Therefore, the Lexington policy did not provide coverage to the City for the wrongful act alleged by Gorman.
[[Image here]]
The existence of a subsequently-issued Lexington policy does not dictate a contrary result on the issue of coverage. Despite the similarities between the April 17, 2010-April 17, 2011 policy and the April 17, 2011-April 17, [2012] policy, there is one very important difference — the defined policy period. The policy in effect for the period of April 17, 2011, to April 17, 2012 (during which period the claim was reported to Lexington) did not extend the policy period for the policy that was in effect from April 17, 2010, to April 17, 2011. A judicial expansion of policy coverage would circumvent the insurance contract that was mutually entered into by the parties and create insurance protection where none existed. Coverage under each policy here requires “[a] claim for a wrongful act shall be first made against the Insured and reported to us in writing during the policy period.” The plain terms of the policies must be enforced. Clearly, the policy required that the claim be first made and reported in the same policy period for there to be coverage.
Gorman, 148 So.3d at 892-93 and 897-98. (Footnotes and some citations omitted).
The Gorman ease was decided after this appeal was docketed and briefed.[2] How *463 ever, it analyzed the exact same factual situation as that existing in the case before us, and decided that renewal of a “claims-made-and-reporting” policy did not extend the reporting period. We are bound by this decision from the Louisiana Supreme Court. | ¡^Therefore, the judgment of the district court must be affirmed.
With reference to the Vallots’ motion for a new trial, we note that their motion did not meet any of the criteria that would have made the granting of a new trial peremptory under LSA-C.C.P. art. 1972. The district court was within its discretion in denying the new trial. See LSA-C.C.P. art. 1978. Therefore, its judgment on this motion will also be affirmed.
CONCLUSION
Based on the foregoing, we affirm the September 16, 2013 judgment, which granted Continental Casualty Company’s motion for summary judgment and dismissed all claims against it. We also affirm the December 2, 2013 judgment, which denied the Vallots’ motion for a new trial. All costs of this appeal are assessed to the Vallots.
AFFIRMED.

. A number of other pleadings were filed by the parties. Because these are unrelated to the issue before this court, we do not reference them in this opinion.

. However, we note that Continental filed a supplemental appellee brief on July 29, 2014, referencing the Gorman case,