# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 15, 2026

Lyle W. Cayce
Clerk

No. 24-30810

———————

Brian Patrick Hargiss,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Princeton Excess & Surplus Lines Insurance Company,

*Defendant—Appellee/Cross-Appellant*.

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:22-CV-886

———————————————————

Before Jones, Stewart, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

This case concerns whether an insured party's breach of a cooperation clause in the insurance policy affects an injured third party's right, under Louisiana's Direct Action Statute, to sue its insurer directly. Because we cannot make a reliable *Erie* guess, we respectfully CERTIFY a question to the Louisiana Supreme Court.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30810

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF LOUISIANA PURSUANT TO RULE XII, LOUISIANA SUPREME COURT RULES.

TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:

I

Louisiana's Direct Action Statute provides an injured party the right of direct action against the injuring party's insurer, but only in limited circumstances and within the terms and limits of the policy. *See* La. R.S. § 22:1269.

In November 2018, Brian Patrick Hargiss (Hargiss) sued the Richland Parish Sheriff and several of his deputies for violating his constitutional and state rights by using excessive force against him during his arrest. The Sheriff was insured under a policy issued by Princeton Excess and Surplus Lines Insurance Company (Princeton) to the Louisiana Sheriffs' Law Enforcement Program (LSLEP), "a statutorily authorized interlocal risk management agency . . . formed by sheriffs to pool their public liability risks." The policy provided coverage "on a claims made basis" and required the insured's "full cooperation in the investigation, settlement, or defense of any Claim." The Sheriff notified the claims administrator for LSLEP about Hargiss's lawsuit in December 2018.

LSLEP's claims administrator reported the Hargiss claim to Princeton in January 2019 in a monthly spreadsheet listing all claims and losses against multiple sheriffs throughout the policy's coverage period. Other than the monthly spreadsheets, LSLEP provided Princeton no other information about Hargiss's claim. It did not inform Princeton that it had engaged in settlement negotiations with Hargiss, including participating in

two settlement conferences, between December 2020 and September 2021. Hargiss's lawsuit proceeded to trial. After a jury verdict in Hargiss's favor and entry of a final judgment against the Sheriff and his deputies, in January 2022, LSLEP requested payment from Princeton. Princeton denied the request.

In February 2022, Hargiss sued Princeton directly in state court under Louisiana's Direct Action Statute, LA. R.S. § 22:1269, and Princeton removed the case to federal court on the basis of diversity jurisdiction. The parties filed cross-motions for summary judgment, and the district court found, *inter alia*, that there was a genuine factual dispute as to whether LSLEP breached the policy's cooperation clause and whether Princeton was prejudiced. However, the district court subsequently held that Hargiss was entitled to recover under the policy regardless because a breach of the cooperation clause would not preclude a direct action against Princeton. Thus, the district court granted Hargiss's motion for summary judgment on the issue. The district court calculated the damages for which Princeton was liable, and concluded that Princeton was liable for less than the amount requested by LSLEP.

On appeal, Princeton argued that the district court erred by denying its summary judgment motion based on LSLEP's breach of the cooperation clause and by finding that the coverage defenses in the policy did not apply to Hargiss. It argues that LSLEP's failure to comply with the policy's cooperation clause negated coverage as a matter of law.

II

A

This court reviews grants of summary judgment *de novo*, applying the same legal standards as the district court. *See Colony Ins. Co. v. First Mercury Ins. Co.*, 88 F.4th 1100, 1106 (5th Cir. 2023). Summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Discover Prop. & Cas. Ins. Co. v. Blue Bell Creameries USA*, 73 F.4th 322, 327 (5th Cir. 2023) (citation omitted).

## B

The parties agree that Louisiana substantive law applies in this diversity action. *See Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("Louisiana choice of law rules dictate . . . that in [an] action involving the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs."). "When determining Louisiana law, this court first looks to 'the final decisions of the Louisiana Supreme Court' and, absent guidance, we make an *Erie* guess to determine 'how [the Louisiana Supreme Court] would resolve the issue if presented with the same case.'" *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 344–45 (5th Cir. 2020) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)).

In making an *Erie* guess, "we adhere to Louisiana's civilian decision-making process, by first examining primary sources of law: the constitution, codes, and statutes." *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 270 (5th Cir. 2009). "Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante*, is merely a secondary law source." *Am. Int'l Specialty Lines Ins. Co.*, 352 F.3d at 261 (citation modified). "But, once a panel of this court decides an issue of state law by making an *Erie* guess, this court is bound by this decision, unless a subsequent state statute or state court decision has rendered the panel's interpretation 'clearly

wrong.'" *Kelly v. State Farm Fire & Cas. Co.*, 582 F. App'x 290, 293 (5th Cir. 2014) (unpublished) (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462–63 (5th Cir. 2010)).

### III

The principal issue in this case is whether an injured third party has the right to sue an insurer under Louisiana's Direct Action Statute despite the insured's breach of a cooperation clause in the policy.

The Direct Action Statute "grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured." *Hood v. Cotter*, 5 So.3d 819, 829 (La. 2008). It provides that once a judgment has been "rendered against the insured for which the insurer is liable which [has] become executory," "an action may thereafter be maintained within the terms and limits of the policy by the injured person . . . against the insurer." La. R.S. § 22:1269(A). "As a matter of public policy, the Louisiana Direct Action Statute prohibits an insurer from asserting against an injured third party certain policy violations of the insured as a defense of liability under the statute." *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 828 (5th Cir. 1986).

The Louisiana Supreme Court has long held that an insurer cannot use an insured's breach of a cooperation clause[1] to defeat a valid claim under the Direct Action Statute without evidence of fraud or conspiracy. *See Futch v. Fid. & Cas. Co. of N.Y.*, 166 So.2d 274, 278 (La. 1964); *King v. King*, 217 So.2d 395, 400 (La. 1968). Relying on *Futch* and *King*, we concluded in

---

[1] Generally, cooperation clauses require the insured to disclose relevant information about the loss "and otherwise to aid the [insurer] to determine its liability under the policy." *Freyou v. Marquette Cas. Co.*, 149 So. 2d 697, 702 (La. App. 3 Cir.), *writ refused*, 150 So.2d 771 (La. 1963) (quotation omitted); *see Trosclair v. CNA Ins. Co.*, 637 So.2d 1168, 1170 (La. App. 4 Cir.), *writ denied*, 642 So.2d 874 (La. 1994) (same).

*National Union Fire Insurance Company of Pittsburgh v. Cagle* that a breach of the cooperation clause by the insured does not affect the third party's rights under the statute to the proceeds of the insurer's policy "absent fraud or collusion." 68 F.3d 905, 912 (5th Cir. 1995). But Louisiana law recognizes that an insurer may, in certain circumstances, raise a breach of the cooperation clause as a defense in a suit by *the insured. See Bankers Ins. Co. v. EMIII Holdings, LLC*, 407 So.3d 681, 697 (La. App. 4 Cir. 2024).

Princeton contends that subsequent to *Futch, King,* and our decision in *Cagle*, the Louisiana Supreme Court held that the Direct Action Statute does not grant third parties greater rights than insureds, citing *Gorman v. City of Opelousas,* 148 So.3d 888, 892 (La. 2014) (finding that the Direct Action Statute does not afford "an injured party a vested right that cannot be taken away because of an insured's failure to report a claim"). *Gorman* explained that provisions on the making and reporting of claims in a claims-made-and-reported policy "provide[] 'the scope of coverage bargained for by the [insured].'" *Id.* at 896 (quoting *Hood*, 5 So.3d at 829). Because the insured in *Gorman* reported the claim to the insurer outside of the claims-made-and-reported policy period, the policy did not provide coverage for the injured third party's claim. *Id.* at 898. The Louisiana Supreme Court emphasized in *Gorman* that absent coverage, the third party was not deprived of her rights because the Direct Action Statute "does not extend any greater right to the injured third party who was damaged by the insured." *Id.* at 897.

*Gorman* concerned provisions on the making and reporting of claims in a claims-made-and-reported policy, which "define the scope of coverage [purchased by the insured] by providing a certain date after which an insurer knows it is no longer liable under the policy." 148 So.3d at 893 (quoting *Resolution Tr. Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir. 1994)). "Allowing coverage beyond that period would be to grant the insured more coverage than that which was bargained for, and to require insurers to provide

coverage for risks not assumed." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Willis*, 296 F.3d 336, 343 (5th Cir. 2002). The requirement in a claims-made-and-reported policy that claims be made and reported during the policy period are distinct from conditions, like an insured's cooperation obligations, that arise after the event triggering coverage under the policy. *See Futch*, 166 So.2d at 278; *King*, 217 So.2d at 400.[2]

Princeton argues that in *United Home Care v. Simpson*, 351 So.3d 904 (La. App. 2 Cir. 2022), *writ denied*, 358 So.3d 518 (La. 2023), the Louisiana appellate court held that the insureds' "failure to report and refusal to cooperate" negated coverage, even as to the third-party claimant. *Simpson* involved a claims-made-and-reported policy with provisions requiring the insured to provide "full compliance with all the terms of this Policy," "written notice of any Claim as soon as practicable," and "information, assistance and cooperation as the [insured] may reasonably require" as express conditions precedent to coverage. *Id.* at 909–10. The court found that because the insureds' reporting of the plaintiff's claim to the insurer was "the trigger that would activate coverage," their "failure to report to *and* refusal to cooperate with [their insurer]" meant that the insureds did not have coverage under the policy. *Id.* at 912 (emphasis added). In other words, the *Simpson* court based its decision to bar the injured third party's direct action against the insurer on the violation of two policy requirements. The court did not indicate that it would have reached the same result had the

---

[2] Princeton argues that the Louisiana Supreme Court in *Hood* and *Anderson v. Ichinose*, 760 So.2d 302 (La. 1999), also recognized that "the Direct Action Statute does not confer any greater rights to third persons than insureds under claims made policies." But *Hood* and *Anderson*, like *Gorman*, only considered provisions relating to the making and reporting of claims. None of these cases analyzed cooperation clauses or addressed whether an insured's failure to cooperate prevents a third-party action under the Direct Action Statute. Further, these cases never mentioned *Cagle*, *Futch*, or *King*.

insured timely made and reported the claim but failed to comply with its cooperation obligations.[3]

"When interpreting Louisiana law, we are bound by this court's prior interpretation, so long as it has not been superseded by Louisiana case law or statute." *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 787 F.3d 276, 281 (5th Cir. 2015). We held in *Cagle* that an insured's breach of the cooperation clause would not affect an injured third party's claim under the Direct Action Statute absent proof of fraud or conspiracy. *See Cagle*, 68 F.3d at 912 (citing *Futch*, 166 So.2d at 278; *King*, 217 So.2d at 400). Since our decision in *Cagle*, the Louisiana Supreme Court decided *Gorman* and a Louisiana appellate court decided *Simpson*. 148 So.3d 888; 351 So.3d 904. Both cases involve direct actions based on claims-made-and-reported policies where the insured did not make-and-report the claim, whereas here, the district court held that the claim was made and reported as required by the policy. Because it is thus unclear whether *Cagle* has been rendered clearly wrong by *Gorman* and *Simpson*, we face an unclear issue of Louisiana law.

## IV

The rules of the Louisiana Supreme Court allow this court, on its own motion, to certify dispositive questions of Louisiana law where there is no "clear controlling precedent from the Supreme Court of Louisiana." La. Sup. Ct. R. XII, §§ 1–2. In deciding whether to certify a question to a state supreme court, we consider the state's certification standards and the following factors:

––––––––––––––––––––––––––––

[3] While *Simpson* noted that "[m]odern cases have overwhelmingly applied the rationale of *Gorman*, applying cooperation clauses literally," the cases it cited do not concern or even mention cooperation clauses. 351 So.3d at 911 (citing *Anderson*, 760 So.2d 302; *Hood*, 5 So.3d 819; *Courville v. Lamorak Ins. Co.*, 301 So.3d 557 (La. App. 4 Cir.), *writs denied*, 302 So.3d 1100, 1115, 1121 (La. 2020); *Ayo*, 31 F. 3d 285).

No. 24-30810

(1) the closeness of the question(s);

(2) the degree to which considerations of federal-state comity are relevant in light of the particular issue and case to be decided; and

(3) practical considerations, such as the possibility of significant delay or difficulty of framing the issue so as to produce a helpful response on the part of the state court.

*Breaux v. Worrell*, 141 F.4th 712, 718 (5th Cir.), *certified question accepted*, 420 So.3d 679 (La. 2025), and *certified question answered*, --- So.3d ----, 2026 WL 972211 (La. 2026). These factors favor certification here.

Regarding the first factor, Louisiana law is unsettled on whether an insured's breach of the cooperation clause in a claims-made-and-reported policy will bar a direct action by an injured third party where the insured timely made and reported the claim; this issue is determinative. While the Louisiana Supreme Court has held since *Cagle* that an insured's failure to timely make and report a claim under a claims-made-and-reported policy precludes a direct action by an injured third party, *Gorman,* 148 So.3d at 898, and a Louisiana appellate court dismissed a direct action claim based on the insured's violations of both the reporting and cooperation provisions, *Simpson*, 351 So.3d at 912, neither case addressed whether a breach of the cooperation clause alone forecloses a direct action where the claim has vested.

Turning to the second factor, comity interests also support certification, as "the final arbiters of state law should have a say on important questions regarding state insurance law." *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 12 F.4th 467, 472 (5th Cir.), *certified question accepted* (Sept. 10, 2021), and *certified question dismissed* (Dec. 3, 2021); *see La. v. Anpac La. Ins. Co. (In re Katrina Canal Breaches Litig.)*, 613 F.3d 504, 511 (5th Cir.)

(certifying an insurance interpretation question to the Louisiana Supreme Court *sua sponte*), *certified question accepted*, 51 So.3d 1 (La. 2010), and *certified question answered*, 63 So.3d 955 (La. 2011). Notably, we have previously certified a question involving the Direct Action Statute to the Louisiana Supreme Court. *See, e.g.*, *Grubbs v. Gulf Int'l Marine, Inc.*, 985 F.2d 762, 763 (5th Cir.), *certified question accepted*, 616 So.2d 691 (La. 1993), and *certified question answered*, 625 So.2d 495 (La. 1993).

As to the final factor, we discern no hardship in certification and see no basis to expect significant delay. *See Breaux*, 141 F.4th at 719; *Self v. BPX Operating Co.*, 80 F.4th 632, 637 (5th Cir.) (finding no "practical impediments to certification" to the Louisiana Supreme Court), *certified question accepted*, 373 So.3d 712 (La. 2023), and *certified question answered*, 388 So.3d 366 (La. 2024).

## V

We respectfully request that the Louisiana Supreme Court address and answer the following question:

> 1) Under a claims-made-and-reported policy, when the insured reports an insured event but breaches their duty to cooperate, does the insured's lack of cooperation preclude the injured third party from bringing a direct action against the insurer?

## VI

We disclaim any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the question certified. If the Court determines a more effective expression of the contours of the Louisiana Direct Action Statute than answering the precise question we have asked, we defer to it to take that course. We transfer to the Louisiana Supreme Court the record and appellate briefs in this case with our certification. We retain this appeal pending the Court's response.

No. 24-30810

QUESTION CERTIFIED TO THE SUPREME COURT OF LOUISIANA.